**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLAUDIA CASSER,<br><br>                  Plaintiff,<br><br>v.<br><br>TOWNSHIP OF KNOWLTON, et al.,<br><br>                  Defendants. | Civil Action No. 3:17-cv-01174(PGS)<br><br>**MEMORANDUM<br>AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court pursuant to the following motions[1]:

1. Motion to dismiss by Defendant Mark Hontz (Knowlton Township Planning Board Attorney) (ECF No. 6);

2. Motion to dismiss by Defendant Robert Greenbaum (Litigation Attorney) (ECF No. 10);

3. Motion to dismiss by Defendant Ted Rodman (Planning Board Engineer) (ECF No. 12);

4. Motion to dismiss by Defendants Joseph Layton and Maser Consulting, P.A. (Planner) (ECF No. 14); and

5. Motion for Rule 11 Sanctions by Defendant Mark Hontz (ECF No. 18)

---

[1] The moving parties are hereinafter referred to collectively as "Municipal Defendants."

I.

Generally, this matter arises out a zoning dispute concerning a ninety-nine acre farm located in Knowlton, New Jersey. In 2007, the Knowlton Township Planning Board adopted a resolution authorizing the development of six residential lots and an agricultural easement on the open space. At the time, Plaintiff Claudia Casser agreed to conform to the Resolution under protest. However, three years later, she sued to set aside the application of the Resolution in state court. Plaintiff's action in the New Jersey Superior Court was based on essentially the same facts presented herein. *Casser v. Knowlton*, 118 A.3d 1071, 1074 (N.J. Super. Ct. App. Div. 2015), certif. denied, 129 A. 3d 329 (N.J. 2016) (hereinafter "Prior State Lawsuit"). In 2017, Plaintiff filed a lawsuit before this Court seeking virtually the same remedy as she did in the Prior State Lawsuit.

In deciding the motions to dismiss, the Court will review Plaintiff's Complaint for sufficiency under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). In accordance with the practice, it is recognized that Plaintiff is a retired corporate attorney; but here she appears as a *pro se* litigant. Consequently, the sufficiency of the *pro se* pleadings will be construed liberally in favor of Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, it is noted that even having been guided by the liberal approach, the Complaint is difficult to follow and lacks sufficient factual support.[1] As such, the requirements of Fed. R. Civ. P. 8(a) and Fed. R. Civ. P. 12(b)(6) apply.

Rule 8(a)(2) requires that "a pleading that states a claim for relief must contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief.

---

[1]     The Complaint has a cover page that is a pro se plaintiff complaint form. Attached to the form is "Attachment A" which is the substance of the allegations. "Attachment B" is a copy of the Prior State Case.

Similarly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). While a court will accept well pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal,* 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). In addition, as a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997) (internal quotations marks and citations omitted).

Plaintiff presents ten different claims in the Complaint.  If one limits its review to the headings of each count, there appear to be viable causes of action; however, when reading the body of each of the claims, numerous paragraphs sets forth conclusory facts, each claim fails to clearly point to specific elements of the claim, fails to provide sufficient support, and fails to specify to which Defendant an allegation applies. The Court can only sift through facts to a certain extent before requiring Plaintiff to amend a complaint that sets forth claims meeting the requirements of Fed. R. Civ. P. 8.

II.

In order to give context to the motions, a summary of the facts is presented. In 1985, Plaintiff purchased over ninety-nine acres of farmland in Knowlton Township, Warren County, New Jersey. (ECF 1 Compl. Ex. A at, 1). Her intent was to use half of the land as her residence and horse farm, and to subdivide the other half into lots for sale. (ECF 1 Compl. Ex. A at ¶2). At that time, Plaintiff imagined she would create sixteen residential lots from the subdivided fifty acres. (ECF 1 Compl. Ex. A at ¶3).

In 1996, the Township of Knowlton adopted a Farmland Preservation Ordinance and a Cluster Ordinance. The Cluster Ordinance preserved open space and/or agricultural land. The Cluster Ordinance required that on parcels greater than 50 acres, half of the tract shall be set aside as open space without compensation, and cluster development is permitted on the other half. From 1993-2003, the density of development was down zoned from one residence per three acres in 1988 to one residence on 10 acres in 2003.

In 2007, Plaintiff filed an application with the Planning Board to subdivide her farm into three 10 acre lots, with a 70 acre remainder. The application noted that upon approval of the application, Plaintiff would seek to sell the 70 acre remainder to a preservation agency. As a result, the Planning Board approved some development, with a significant agricultural easement or open space set aside. Plaintiff conformed to the conditions set forth in the approval under protest. Plaintiff did not appeal the Planning Board's decision by way of an action in lieu of prerogative, which must be filed within 45 days of the Planning Board's decision, N.J.R. 4: 69-6(a).

On March 5, 2010 (about three years later), Plaintiff filed an action in the Superior Court of New Jersey ("Prior State Lawsuit"), against various Township officials. In her complaint,

4

Plaintiff alleged that the Planning Board's selective enforcement of the Cluster Ordinance and the Farmland Preservation Ordinance resulted in an unlawful taking of 50 acres of land without compensation. (ECF 1 Comp. Ex. A ¶¶ 37-47). In 2011, Defendant Mark Hontz settled all Plaintiff's claims raised against him in the Prior State Lawsuit. (Compl. ¶12).

Plaintiff continued litigation against the other Defendants, which ultimately resulted in the court's granting of summary judgment on April 12, 2013. The appeal and litigation history of this matter in state court is somewhat confusing. Plaintiff filed multiple appeals. Plaintiff appealed the Orders of August 31, 2011, April 12, 2013 and May 24, 2013. As summarized in the Appellate Division's decision, "[t]he August 31, 2011 order dismissed her civil rights claims for failure to exhaust administrative and judicial remedies. The April 12, 2013 order dismissed plaintiff's municipal land use claims, and constitutional takings claims for the same reason, and denied plaintiff's motion to amend her complaint. The May 24, 2013 order denied plaintiff's motion for reconsideration of the April 12, 2013 order." *Casser v. Twp. of Knowlton*, 2015 N.J. Super. Unpub. LEXIS 1620, *2 (N.J. Super. Ct. App. Div. July 7, 2015). Plaintiff also appealed an April 18, 2013 Order denying her motion to amend her complaint to include a challenge of land use approvals to two other landowners (Anderson and Puglia). The appeals were consolidated. The Appellate Division affirmed all claims but the appeal of the April 18, 2013 order, which was remanded to the trial court. *Casser,* 118 A.3d at 1073.

The Prior State Lawsuit was initially dismissed because it was untimely under the precedent set forth in *Rezem Family Assocs. LP v. Borough of Millstone*, 30 A.3d 1061 (N.J. Super. Ct. App. Div.), certif. denied, 29 A.3d 739 (N.J. 2011). In *Rezem*, the Court held that before reviewing a §1983 action arising from a decision of a land use application "the developers [must have] exhausted available administrative and judicial remedies or sought a final decision . . . before

Plaintiff filed this civil rights lawsuit." *Casser*, 118 A.3d at 1078 (quoting *Rezem*, 30 A.3d at 1061). That is, an action in lieu of prerogative writ challenging the Planning Board's decision must be filed within 45 days of that decision (N.J.R. 4:69-6(a)). Without having filed such an action, the *Casser* Court held the plaintiff failed to exhaust her remedies, and therefore, the matter was not ripe for adjudication. The Court explained that the rationale for the *Rezem* precedent is the public "importance of stability and finality to public actions" and to allow a civil rights law suit without having exhausted remedies "would defeat the important policy of repose expressed in the forty-five day time limit." *Casser*, 188 A. 3d at 1079-80. The New Jersey Supreme Court denied certification. There was no appeal to the Supreme Court of the United States.

### *Complaint (Federal Court)*

On February 16, 2017, *pro se* Plaintiff filed a Complaint in the District Court of New Jersey against a number of "Municipal Defendants." They are Mark Hontz, the Knowlton Township Planning Board attorney; Robert Greenbaum, the litigation attorney for Municipal Defendants in the Prior State Lawsuit, Ted Rodman, the Planning Board Engineer, Maser Consulting, P.A. and its employee Joseph Layton, the Planning Board's Planners[2], and the members of the Knowlton Township Planning Board. (Compl. ¶12).

Plaintiff raised the following causes of action in her Complaint: (1) Fifth Amendment taking without just compensation, applicable to defendants under the Fourteenth Amendment and 42 U.S.C. §1983; (2) denial of equal protection; (3) In the alternative, if the cluster ordinance is unlawful on its face or as applied to Plaintiff's 2007 subdivision- unreasonable seizure of property in violation of the Fourth Amendment and Section 1983 and 1985; (4) in the alternative, in violation of substantive due process; (5) Municipal Defendants' concerted misrepresentations,

---

[2]     Hereinafter, the Court will refer simply to Maser Consulting, as the rationale of this decision applies to Joseph Layton as well.

concealment of documents, and fraud on the State Court rendered Plaintiff's state law remedy ineffective, thereby depriving her of access to the courts in violation of the First and Fourteenth Amendments and Sections 1983 and 1985; (6) Municipal Defendants' concerted misrepresentations, concealment of documents, and fraud on the State Court deprived Plaintiff of her causes of action in the Prior State Lawsuit, in violation of her Fourteenth Amendment's due process clause and 42 U.S.C. §1983 and §1985; (7) Judiciary Defendant's denial of Plaintiff's access to the Court and opportunity to be heard; (8) denial of trial by jury/procedural due process through the state Court's adoption of Defendants' disputed facts without providing Plaintiff the opportunity to be heard set forth in the State Court's rules; (9) Municipal Defendant conspiracy to deprive Plaintiff of procedural and substantive due process through intentional misrepresentations and fraudulent concealment prior to Filing the Prior State Lawsuit; and (10) Municipal Defendant conspiracy to deprive Plaintiff of procedural and substantive due process though intentional misrepresentations, fraudulent concealment, spoliation, and fraud on the State Court after filing the Prior State Lawsuit. All claims except claims (7) and (8) appear applicable to the moving Defendants[3].

Generally, Plaintiff argues that because of the actions and conspiracy of Municipal Defendants, she was unable to obtain effective remedy in state court. She seeks compensation for unjust taking of her property or, in the alternative, return of the property seized; specifically, she seeks (a) cancelling of the "open space" easements and deletion of the deed restrictions associated with the Cluster Ordinance in the deeds filed in 2009 to perfect the minor subdivision; (b) removal of the 16 preservation markers; (c) compensation for damages suffered in connection with illegal seizure; and (d) other relief as the Court deems just. (Compl. ¶95). Defendants generally argue

---

[3]     The Court previously dismissed the counts 7 and 8 against Chief Justice Rabner.

7

that the Prior State Lawsuit and this lawsuit are the same with regard to the underlying facts and remedy, except here Plaintiff is disguising the Prior State Lawsuit claims by characterizing them as acts of fraud, concealment and conspiracy.

Defendants Hontz, Rodman, and Maser move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that Plaintiff's claims are barred by the *Rooker-Feldman* Doctrine.[4]  Defendant Greenbaum argues the litigation privilege as basis to dismiss the claims raised by Plaintiff against him. In the alternative, all Defendants move to dismiss any remaining claims pursuant to Fed. R. Civ. P. 12(b)(6). Given the number of motions and the similar issues raised by Defendants, the Court looks at Defendants' individual involvement and arguments with regard to this matter after reviewing the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).

III.

Plaintiff's Complaint is essentially seeking this Court's review of the previous decision of the state court. Further, there are several claims that were not raised in the Prior State Lawsuit but they are claims that could have been raised in the Prior State Lawsuit. Overall, the entire federal case brought by Plaintiff is centered upon the controversy litigated in state court over the span of five years. Thus, Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, *Res Judicata,* and the *Entire Controversy Doctrine*.

Plaintiff raised the following claims in her Prior State Lawsuit: (1) exceeding authority of the Municipal Land Use law; (2) failure to proceed under N.J.S.A. §40:55D-44; (3) equitable estoppel/injunction; (4) declaratory judgment and reformation; (5) irrational and discriminatory application of the open space ordinance under New Jersey Civil Rights Act in violation of

---

[4]     *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 432 (1983).

Plaintiff's equal protection and due process rights; (6) disproportionate burden under the New Jersey Civil Rights Act; (7) unlawful discrimination against a protected class based on Plaintiff being female, Jewish and "not a team player;" (8) improper taking without just compensation; (9) inverse condemnation; (10) conspiracy under the New Jersey Civil Rights Act; (11) reformation of irregularly configured lot boundaries; (12) conspiracy under New Jersey RICO, as well as a fraudulent concealment claim.

In this next section, the Court will outline all applicable standards in addition to the previously mentioned requirements of Fed. R. Civ. P. 8(a). The Court will then review each claim accordingly.

### *Res Judicata and the Entire Controversy Doctrine*

A federal court is required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged. *Chrystal v. N.J. Dep't of Law & Pub. Safety*, 535 Fed. Appx. 120, 123 (3d Cir. 2013). "Thus, to determine whether [] preclusion is a necessary consequence of prior state court litigation, a court must look to the law of the state adjudicating the prior action." *Coppolino v. Total Call Intern.*, Inc., 588 F. Supp. 2d 594, 599 (D.N.J. 2008) (further citation and internal quotations omitted).

> The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought. It protects litigants from the burden of relitigating an identical issue with the same party or his privity and promotes judicial economy by preventing needless litigation. Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.

*In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (further citation and internal quotations omitted).

9

"New Jersey's entire controversy doctrine, which this Court is bound to apply, 'compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action,' including defenses and counterclaims . . . .  It does so by barring parties from raising, in a subsequent proceeding, any claims it knew, or should have known about, during a prior proceeding . . . The doctrine does not bar claims that "accrued after the pendency of the original action." *Napoli v. HSBC Mortg. Servs.*, 2012 U.S. Dist. LEXIS 121204, at *8-10, (D.N.J. Aug. 27, 2012) (internal citations omitted).

The entire controversy doctrine is an equitable doctrine and "the polestar of the application of the rule is judicial fairness." *Crystal*, 535 Fed. Appx. at 123 (citation omitted). "As a result, the doctrine does not apply to bar component claims that are either unknown unarisen or unaccrued at the time of the original action." *Id.* at 124. (citation omitted). Further, "in considering fairness to the party whose claim is sought to be barred a court must consider whether the claimant had a fair and reasonable opportunity to have fully litigated that claim in the original action. Id. (citation omitted).

As this Court sees it, Plaintiff had a reasonable opportunity to raise the discernable claims brought before this Court, during her state action.  Further, not only are Plaintiff's claims as currently set forth barred by the entire controversy doctrine, but they are also barred by the *Rooker-Feldman* doctrine as discussed below.

### *Rooker-Feldman*

The *Rooker-Feldman* doctrine "precludes a United States District Court from exercising subject-matter jurisdiction" in an action previously resolved in state court. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).  It is this Court's critical task to "identify those federal suits that profess to complain of injury by a third party, but actually

10

complain of injury 'produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)).

In order to apply *Rooker-Feldman*, four elements must be shown. They are: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments;" (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiffs invite the district court to review and reject the state judgments. The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim. *Great Western Mining & Mineral Co.*, 615 F.3d at 166 (internal citations omitted). Plaintiff meets the first requirement because she lost in state court. There is also no dispute as to the timing of the judgment, as per the third factor. However, factors two and four require more analysis in certain claims which are discussed below.

**Claim I:      Fifth Amendment taking without just Compensation, Applicable to Defendants Under the Fourteenth Amendment and 42 U.S.C. 1983.**

Under this claim, Plaintiff narrates the events that led up to the Prior State Lawsuit, including the purchasing of her land, the decisions by the Planning Board, and the 2010 proceedings. Plaintiff requests compensation for the adverse effects that the Planning Board Resolution had on her use of the land. (Compl. ¶65). Generally, Plaintiff seeks just compensation for agricultural easements taken and removal of preservation markers. (Compl. ¶ 65). This is effectively the same request she was denied in state court. In addition, the facts in Claim 1 (¶18-65) are virtually the same as the Prior State Lawsuit. Interestingly, in Claim I, Plaintiff acknowledges that in the Prior State Lawsuit she "complained of official misconduct, requested compensation for physical and regulatory takings authorized by the Resolution, and selective enforcement of the Cluster Ordinance" in the Prior State Lawsuit. (Compl. ¶ 49)  This is a clear

11

acknowledgment that this suit is litigation seeking to reverse the state judgment. *See Marran v. Marran*, 376 F.3d 143, 149 (3d Cir. 2004) ("The Rooker-Feldman doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment."). In that way, Plaintiff is seeking a second bite of the apple. Such an approach is barred by the *Rooker-Feldman* doctrine.

### Claim II: Denial of Equal Protection

In Claim II, Plaintiff alleges that Municipal Defendants caused her requests for information "to be answered in bad faith in order to: conceal the fact that Plaintiff was being treated substantially differently from similarly situated prior applicants; quell her challenge to the Cluster Ordinance; and persuade her to create and manage the agricultural easements for the benefit of the public without compensation." (Compl. ¶72). Plaintiff further alleges that she did not become aware of the disparate treatment until early 2010 when in response to her OPRA request, the Township allowed her access to the municipal document vault. (Id. ¶¶73-74). It was then that Plaintiff allegedly found that other applications, similar to hers that had been approved over the years between 1993-2004. (Compl. ¶75). Among the approved applications listed in Complaint were those of Anderson and Puglia, which Plaintiff attempted to include in her state claim in 2013 via a motion to amend the complaint. That motion was denied and appealed (see page 5). *See Casser*, 2015 N.J. Super. Unpub. LEXIS 1620, at *24 (N.J. Super. Ct. App. Div., July 7, 2015). Secondly, Plaintiff notes "in the 2010 Action, Plaintiff included claims for class of one denial of equal protection." (Compl. ¶78) Thus, it is evident that not only was Plaintiff in possession of the applications during the state action, but also that said information was taken into consideration by the state court. Additionally, in her Complaint Plaintiff acknowledged pursuing the "selective enforcement of the Cluster Ordinance" against her in Prior State Lawsuit. (Compl. ¶49). For those

reasons, the Court's review of Count II of the Complaint is barred under the *Rooker-Feldman* doctrine.

> **Claim III:** **In the alternative if the Cluster Ordinance is unlawful on its face or as applied to Plaintiff's 2007 subdivision: unreasonable Seizure of Property in Violation of the Fourth Amendment and Section 1983 and 1985.**

Claim III mostly concerns a hypothetical scenario that would be presented if the Cluster Ordinance were to be found illegal. (Compl. ¶¶84-85). Specifically, the claim states "[i]f the Cluster Ordinance was illegal on its face, this seizure was unreasonable." (*Id.* ¶85). At this juncture, the Court has no evidence showing that the Cluster Ordinance was, or is, illegal; and this case does not seek such a declaration. As the Court understands it, Claim III concerns events and facts that Plaintiff discovered before or while her action in state court was pending, that were either reviewed or should have been raised by that court. Thus, in the same manner as Claim II, Claim III is also barred by the *Rooker-Feldman* doctrine and doctrines of preclusion.

> **Claim IV:** **In the alternative, violation of substantive due process.**

In Claim IV, Plaintiff alleges that Municipal Defendants "[a]busing their official positions in the municipality … conspired to, aided and abetted each other to, and did trick, coerce, and extort the Real Property Rights from Plaintiff and impose a disproportionate burden on Plaintiff to provide "open space" for the benefit of the public." (Compl. ¶98). Claim IV first mentions events that took place in 2013, after the Prior State Lawsuit was filed, alleging that Defendants "actively conceal[ed] from the court the reasons for amending the Cluster Ordinance in 2013, which were (i) to gain a litigation advantage in the Prior State Lawsuit and (ii) to attempt to cure the illegality of the ordinance." (Compl. ¶98(f)(iii)). This is the second of two conspiracies Plaintiff alleges Defendants were involved in, the first one dating back to the 2007 events that led to the state action.

Claim IV also states:

> [i]n the event Plaintiff's First Claim is denied on the basis that the Cluster Ordinance was illegal, Plaintiff states that application of the illegal Cluster Ordinance to deprive her of her property rights described in the First Claim was [sic] deprived her of substantive due process in violation of the Fifth and Fourteenth Amendment, also providing a cause of action under 42 U.S.C. 1983 and 1985.

(Compl. ¶97). The same allegations are set forth in Claim X.

In paragraph 98, Plaintiff lays out actions that point to Defendant's abuse of their official position. Paragraph 98(a) and (b) speak about the application of the Ordinance as well as Defendant's alleged misrepresentations made to Plaintiff. Among the listed malfeasances Plaintiff mentions: "intentional misrepresentations to Plaintiff that the same property rights they were demanding from Plaintiff were taken from all other subdivision applicants[,]" "[c]oncealment of documents that would have proved the Planning Board did not take the same property rights from other subdivision applicants[,]" falsification of the text of the resolution and minutes and resolutions related to other application's decisions. (Id. ¶98(a-e)). Plaintiff goes on to mention a series of "2007 intentional misrepresentations" in paragraphs 99-103, which serve as an expansion of paragraph 98(b), wherein she names the Defendants who allegedly made misrepresentations to Plaintiff. Those statements, a lot of which remain unsupported, refer to actions that she could have objected to or raised in the Prior State Lawsuit.

Moreover, in paragraph 104 Plaintiff states "[i]n 2010, when Plaintiff discovered the documents concealed in 2007, she promptly filed the 2010 Action." This statement provides further evidence that Plaintiff is simply seeking a second bite at the apple. Reviewing any of those allegations would require this Court to review the decision of the state court and is therefore barred by *Rooker-Feldman*. If Plaintiff wished to seek recourse with regard to Defendants' conduct during the state action, she should have done so in state court.

14

The remainder of paragraph 98 (f-m) sets forth allegations regarding the state court proceedings. These are specifically directed to Greenbaum, an attorney representing Municipal Defendants during the Prior State Lawsuit. Plaintiff alleges, among other things that Greenbaum (1) set forth false facts contained . . . in the 'expert report'" by Banish Associates, Inc. to the trial court; (2) made unlawful assertions in filings and oral argument about the Cluster Ordinance; (3) prevented Plaintiff from deposing Banish; (4) refused to provide the original draft of the Banish report to Plaintiff; (5) intentionally created a conflict with Judge O'Connor; (6) falsified minutes and resolution regarding the 2013 Anderson and Paglia subdivision applications; (7) falsified and failed to produce "public session" and "executive session" minutes. (Compl. ¶98(f-m)). All these actions could amount to trial strategy decisions by Greenbaum and assuming they were illegitimate, those are actions for which Plaintiff could have sought recourse during the Prior State Lawsuit.

Although the events narrated in this claim appear to have occurred after 2010, they mostly concern alleged improprieties that occurred in the course of the Prior State Lawsuit that Plaintiff either became aware of, or attempted to raise in the state action.  Review of this is thus barred.

**Claim V:**    **Municipal Defendants' Concerted Misrepresentations, Concealment of Documents, and Fraud on the State Court Rendered Plaintiff's State Law Remedy Ineffective, thereby Depriving her of Access to the Courts in Violation of the First and Fourteenth Amendments and sections 1983 and 1985.**

Plaintiff begins this claim by stating that the claims she set forth in her Prior State Lawsuit were not frivolous. (Compl. ¶112). Plaintiff then discusses the reasons for the Prior State Lawsuit dismissal, the "Rezem Doctrine," and Plaintiff's failure to timely file an action in lieu of prerogative writs contesting the Resolution within 45 days from its publication in 2007. (Id. ¶113). Plaintiff attributes her failure to comply with the requirements to Defendants misrepresentations

and intentional delay in responding, as well as responding in bad faith to her 2007 OPRA requests. (Id. ¶114). Again, Plaintiff was aware of the alleged misrepresentation that led to the delay prior to her Prior State Lawsuit. As she stated in Claim IV, "[i]n 2010, when Plaintiff discovered the documents concealed in 2007, she promptly filed the 2010 Action." (Compl. ¶104). The alleged misrepresentation and delays were an issue before the state court to review. Thus, Claim V will also not be reviewed by this Court.

**Claim VI:**  **Municipal Defendants' Concerted Misrepresentations, Concealment of Documents, and Fraud on the State Court Deprived Plaintiff of her Causes of Action in the 2010 Action, in Violation of the Fourteenth Amendment's Due Process Clause and 42 U.S.C. 1983 and 1985**

The Court notes that the remaining claim, Claim VI, which proposes facts that are allegedly further specified in claims IX and X, fails to meet the previously mentioned requirements of Fed. R. Civ. P. 12(b)(6) and Rule 8(a), insofar it does not set forth plausible allegations. Plaintiff states: "Municipal Defendants conspired to deprive, and arbitrarily and unreasonably did deprive Plaintiff of her State causes of action in the 2010 Complaint." This statement is unclear and is conclusory.

**Claim IX:**  **Municipal Defendant Conspiracy to Deprive Plaintiff of Procedural and Substantive Due Process through Intentional Misrepresentations and Fraudulent Concealment prior to Filing the 2010 Action.**

Claim IX and X are similar as they both appear to allege fraud, conspiracy, and due process violations. However, Claim IX, at least in the title, proposes events that occurred prior to the Prior State Lawsuit as basis of the claim. In paragraph 167 Plaintiff specifically mentions the nature of Claim IX stating,

> The ninth claim regards Municipal Defendants' misrepresentations and concealment of documents from 2007 through the date in early 2010 when, in response to new OPRA requests from Plaintiff, the Municipal Defendants provided Plaintiff access to the municipal document vault where she discovered the files of prior minor subdivision applications proving the Planning Board singled her out for disparate treatment.

(Compl. ¶167). In paragraph 169, Plaintiff states that she did attempt to amend her complaint in 2014, during her state action, however the request was denied.

In paragraph 168, Plaintiff sets forth facts that she discovered after the Prior State Lawsuit ended. She states,

> Plaintiff did not discover until 2016, when she made yet another OPRA request, that the Planning Board and Township Committee kept minutes of "executive" aka "closed" meetings somewhere other than the document vault to which the Municipal Clerk gave her access in 2010. To this day Plaintiff had not been provided access to relevant "executive" meeting minutes. In 2016, the Municipal Clerk informed Plaintiff that the Planning Board or Township Committee violated their non-discretionary statutory duties under the OPMA and MLUL to create, or to formalize or approve minutes created, then they "did not exist" and she was not required to provide them in response to an OPRA request."

Plaintiff provides no support as to the facts about how the request for documents was made, what documents were requested and who was responsible. This general allegation is akin to a conclusory statement. Thus, for those reasons, the Claim IV also fails.

**Claim X:** **Municipal Defendant Conspiracy to Deprive Plaintiff of Procedural and Substantive Due Process through intentional misrepresentations, fraudulent concealment, spoliation and fraud on State Court After Filing the 2010 Action.**

According to Plaintiff, Claim X purports to discuss events that allegedly occurred after the Prior State Lawsuit was filed.[5] The Court does not read this claim in such a manner.

The Claim is a mishmash of facts. At first it is directed at Greenbaum. The Complaint alleges that Greenbaum "instructed Municipal Defendants to not apply the Cluster Ordinance to applicants for minor subdivision" and to conceal this advice from the Plaintiff and the State Court. (Compl. ¶177). Paragraph 184 furthers that Defendant Greenbaum concocted a reason that caused

---

[5]    This Claim further expands on the allegations set forth in Claim IV, paragraphs 97, and paragraph 98 (f-m) (Claim IV).

Judge O'Connor to recuse herself from the Prior State Lawsuit. Plaintiff alleges without any specific facts that Defendant did so because Judge O'Connor was favoring her arguments. The subsequent Judge assigned to the case dismissed the Prior State Lawsuit in its entirety on summary judgment. (Compl. ¶186). Paragraphs 187-189 sets forth further claims against Defendant Greenbaum who allegedly "instructed the Planning Board to formally recommend and the Township Committee to pass amendments to the cluster Ordinance to conform it to the MLUL." These allegations are conclusory. There are no specific facts alleged to support the claim.

Next, the Plaintiff directs the claim to other defendants. Paragraph 190 alleges that Municipal Defendants violated "their non-discretionary duties" and failed to keep the minutes that the MLUL and New Jersey Open Public Meetings Act (OPRA) require. This failure was caused by "their conviction that the 'mandatory' Cluster Ordinance was illegal as applied to minor subdivisions like Plaintiff's subdivision and the 2013 Anderson subdivision." (Compl. ¶191). The subsequent paragraph, though unclear, appears to connect the actions by Municipal Defendants to the drafting of an amendment to the Cluster Ordinance by Maser Associates. (Id. ¶ 192). Based on those actions and the alleged concealment of evidence, Plaintiff alleges that Defendants perpetrated fraud on the State court in the Prior State Lawsuit. (Id. ¶194).

In paragraph 195, Plaintiff again mentions Defendants' duty to disclose their conviction that the Cluster Ordinance was illegal. The Court is unclear on the basis of this allegation. It is unclear whether Defendants found the Ordinance to be illegal, or what duty they had. Plaintiff further alleges in paragraph 196 that Defendants failed to disclose interrogatories, corrections to answers and admissions, in an effort to perpetrate a conspiracy. All of these issues should have been address in the Prior State Lawsuit.

**18**

In paragraph 179, Plaintiff provides an example of such practice discussing the Anderson application, which as previously discussed, will not be reviewed by the Court because Plaintiff raised the issue or at least tried to during the state action. Paragraph 182 and 183 are not clear and appear to be conclusory.

In paragraph 198 and 199 Plaintiff raises a claim of conspiracy under 42 U.S.C. §1983 which the Court assumes is based on the actions alleged in prior paragraphs of this claim. All of these claims could have been resolved in the Prior State Lawsuit. Plaintiff sought or could have sought recourse to the state court. Her failure to do so prevents this lawsuit against the Defendants from moving forward.

IV.

Having reviewed the Complaint, the Court looks at each Defendant's motion to dismiss to assess the extent to which Plaintiff should be allowed to file an amended pleading.

### *Mark Hontz*

Hontz was named as a Defendant in the Prior State Lawsuit. On September 28, 2011, Hontz settled with Plaintiff and all claims against Hontz were dismissed in exchange for a payment of $1,000.00 and the execution of a Settlement Agreement (release) by Plaintiff. The settlement/release states:

> Mark J. Hontz and Claudia Casser, both of whom are attorneys, mutually release and give up any and all claims and counterclaims, known or unknown, that could have been raised or were raised during the Proceedings including any and all claims arising from the Plaintiff's attempt to subdivide her property designated on the official Tax Map of the Township of Knowlton as Block 8 Lot 2, any and all claims arising from Plaintiff's OPRA requests, and any and all claims arising from Defendants Hontz service as Planning Board Attorney through the date of this agreement. This Agreement specifically releases and waives any claims which could have been brought up to the date of this Agreement under the Open Public Records Act, New Jersey Municipal Land Use Law, the Declaratory Judgment Act, the New Jersey Civil Rights Act, the New Jersey Law Against Discrimination, the New Jersey Constitution, and the federal and New Jersey Racketeering and Corrupt

19

Organization Acts, the federal Civil Rights Acts, including 42 U.S.C. 1983, United States Constitution, and any other federal, state or local criminal or civil law, statute ordinance, regulation, and any claim based on public policy, contract, torn, or common law, including claims of fraudulent concealment and claims for attorney fees. This Agreement releases and waives any claims involving any continuing effects of action or practices which arose prior to the date of the execution of this agreement. (ECF No. 6-4, ¶ 1).

Hontz now argues that all claims that are raised in this suit were the subject of the Release.

Plaintiff argues that the settlement only released Hontz from liability for conduct that occurred prior to September 29, 2011; however, it does not apply to Hontz alleged misconduct in 2013. Plaintiff has not provided any support to the claims that the alleged conspiracy continued after the Prior State Lawsuit.

Based on this language, the Court finds that the Settlement releases Hontz from liability for all actions as alleged in the Complaint before this Court. Therefore, Hontz's motion to dismiss is granted.

### Ted Rodman

At all times referenced in the Complaint, Rodman served as the Planning Board Engineer for the Township of Knowlton. Rodman adopts the arguments of Hontz's motion to dismiss, aside from the settlement defense. Plaintiff alleges that Rodman joined in both of the conspiracies that took place respectively in 2007 and 2013. In alleging claims against Rodman, Plaintiff supports that *Rooker-Feldman* doctrine does not apply because Rodman was not a party to the Prior State Lawsuit. Mainly, Plaintiff argues that but for Defendant Rodman's misrepresentations and failure to correct other Defendants' misrepresentations in 2007, Plaintiff would have timely filed an action in lieu of prerogative writs to challenge the illegal conditions, and she would not thereafter have been barred from having the state court hear her substantive claims. Although this is made clear in Plaintiff's brief, it is not set forth in the Complaint. Even if it had been, Plaintiff seems to have

20

been aware of Defendant's alleged misrepresentation before or during the Prior State Lawsuit. If she wished to bring an action against Rodman she could have done so then. Therefore, Rodman's motion to dismiss is granted and all claims are against him are dismissed because barred by the entire controversy doctrine.

### Maser Consulting

The Court was unable to discern any viable claims against Maser. In Plaintiff's opposition, Plaintiff acknowledges that Maser was not involved in any of the events until 2013. The only paragraph specifically mentioning Maser is in Claim X where Plaintiff states,

> Defendant Layton or Maser Associates (The Planning Board planner) then drafted, the Planning Board formally recommended, and the township committee passed amendments to the Cluster ordinance.

(Compl. ¶192). As the Court sees it, this is a fact not a claim. It is unclear what Plaintiff is alleging. Thus, Maser's motion to dismiss is granted.

### Robert Greenbaum

Defendant Greenbaum represented some of the municipal defendants in the action Plaintiff brought in 2010 in connection with alleged municipal misconduct. He brings a motion, *pro se*, to dismiss Plaintiff's claims against him pursuant to Rule 12(b)(6) asserting that he should be entitled to dismissal as a matter of law under the doctrine of litigation privilege. Plaintiff rebuts Greenbaum's motion to dismiss arguing that Greenbaum was not merely a counsel but he encouraged violation of the law by his clients and Defendant Hontz. Thus his conduct was not protected by the privilege.

Plaintiff's factual basis for a claim against Greenbaum are alleged in Paragraph 14 of the Complaint.

> Defendant Greenbaum joined that conspiracy[ ] sometime after January, 2010, when, starting no later than 2011, he masterminded further fraudulent concealment, spoliation and frauds upon the State court on behalf of Municipal Defendants and others.

(Compl. ¶14). Allegations against Greenbaum have been listed in the above analysis of Claims IV and X and will not be repeated here.

Under the common law of New Jersey, the litigation privilege "insures that '[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi judicial proceedings are absolutely privileged and immune from liability.'" *Rickenback v. Wells Fargo Bank, N.A.*, 2009 U.S. Dist. Lexis 52760, at *30 (D.N.J. June 22, 2009) (quoting *Peterson v. Ballard*, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996)). The rationale for the privilege "is to allow parties to such proceedings 'unfettered expression critical to advancing the underlying government interest at stake in those settings.'" *Id.* (quoting *Peterson*, 679 A.2d at 659-60). This privilege does not merely protect statements made in the courtroom, but has been extended "even to statements made by attorneys outside the courtroom, such as in attorney interviews and settlement negotiations." *Id.* (quoting *Loigman v. Twp. Comm. of Middletown*, 889 A.2d 426, 438 (N.J. 2006)). As a result, in order to determine whether the privilege applies to a given communication or statement, the court must examine whether (1) it was "made in judicial or quasi-judicial proceedings"; (2) it was made "by litigants or other participants authorized by law"; (3) it was made in order "to achieve the objects of the litigation"; and (4) the communication has "some connection or logical relation to the action." *Id.* at *30-31 (quoting *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995)). This determination is a question of law for the court to determine. *Id.* at *31.

At this juncture, the Court does not have sufficient information to find whether the litigation privilege applies. However, as per the above analysis, the Court finds that all Claims

22

raised by Plaintiff against Greenbaum could have been raised in the course of the 2010. Again, Plaintiff has not provided sufficient facts to support claims that arose after the Prior State Lawsuit. Therefore, Plaintiff's claims against Greenbaum should be dismissed, although for reasons that differ from those argued in Defendant's motion to dismiss.

VII.

Lastly, the Court reviews Defendant's Hontz' motion for Sanctions pursuant to Rule 11. Defendant Hontz requests this Court enter an order sanctioning Plaintiff, retired attorney, Claudia Casser for violation of Fed. R. Civ. P. 11(b). The Rule states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Hontz requests that Plaintiff be sanctioned for submitting frivolous claims to the Court.

Rule 11 authorizes imposition of sanctions upon the signer of any pleading, motion or other paper that was presented for an improper purpose, e.g., "to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995) (citing *Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991). Sanctions are appropriate only if "the filing of the complaint constituted abusive litigation or misuse of the court's process." *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994) (citing *Teamsters Local Union No. 430 v. Cement Express*,

23

Inc., 841 F.2d 66, 68 (3d Cir. 1988). "[T]he mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be thought to establish a rule violation." *Simmerman*, 27 F.3d at 62; *see also Arab African Int'l Bank v. Epstein*, 10 F.3d 168, 175 (3d Cir.1993).

The standard for imposing Rule 11 sanctions is one based upon objective reasonableness under the circumstances. Bad faith on the part of the plaintiff is not required. *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir.1995) (citations omitted). Subjective good faith on the part of the attorney, however, is insufficient to avoid sanction. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479,482 (3d Cir. 1987)(quoting Schwarzer, *Sanctions Under the New Rule 11--A Closer Look*, 104 F.R.D. 181, 187 (1985) ("the Rule does not permit use of the "pure heart and empty head defense")). This Court must examine the objective knowledge of the attorney at the time the challenged paper was signed to determine whether the claim was well grounded in both law and fact. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990); *Teamsters Local Union No. 430*, 841 F.2d at 68; *Eavenson, Auchmuty & Greenwald v. Holtzman*, 775 F.2d 535, 540 (3d Cir. 1985). As the Third Circuit has stated, an attorney must "Stop, Think, Investigate, and Research before filing papers either to initiate a suit or to conduct the litigation." *Gaiardo*, 835 F.2d at 482. *See also Becker v. Sherwin Williams*, 717 F. Supp. 288, 296-97 (D.N.J. 1989). Sanctions are warranted, however, "only in the 'exceptional circumstance' where a claim or motion is patently unmeritous or frivolous." *Ford Motor Co. v. Summit Motor Products. Inc.*, 930 F.2d 277. 289 (3d Cir.), cert. denied, 502 U.S. 939 (1991) (citing *Doering v. Union Cnty Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)).

Here, Plaintiff is proceeding as *pro se*, not in her capacity as an attorney. Further, "[t]he Court ordinarily gives lawyers the benefit of the doubt and only reluctantly grants sanctions in

extreme circumstances." *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 714 (D.N.J. 2015). Thus, the motion for sanctions is denied at this time.

## ORDER

This matter having been opened to the Court by Defendants' motions to dismiss and Motions for Sanctions (ECF Nos. 6, 10, 12, 14, and 18) and the Court having fully considered the submissions in support thereof, and any opposition thereto; and having considered the arguments of counsel; and for good cause having been shown;

IT IS on this 29th day of March, 2018,

**ORDERED** that Defendant Mark Hontz's motion to dismiss (*see* ECF No. 6) is granted; and it is further;

**ORDERED** that Defendant Robert Greenbaum's motion to dismiss (*see* ECF No. 10) is granted and it is further;

**ORDERED** that Defendant Ted Rodman's motion to dismiss (*see* ECF No. 12) is granted; and it is further;

**ORDERED** that Defendant Maser Consulting's motion to dismiss (*see* ECF No. 14) is granted; and it is further;

**ORDERED** that Defendant Mark Hontz's motion for sanctions Pursuant to Rule 11 (ECF No. 18) is denied; and it is further.

**ORDERED** that Plaintiff may file an amended complaint pursuant to specifications of this memorandum within 30 days from the date of this order.

_____
PETER G. SHERIDAN, U.S.D.J.