**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

Claudia Casser

_____

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

Township of Knowlton,
Mayor and Committee for the Township Board of Knowlton,
Township of Knowlton Planning Board,
Municipal Clerk and Records
Custodian of the Township of Knowlton,
Robert J. Greenbaum,
Jane and John Does 1-3

_____

_____

_____

**R E C E I V E D**

APR 30 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

**COMPLAINT**

Jury Trial: ☒ Yes ☐ No
(check one)

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

**I.     Parties in this complaint:**

A.     List your name, address and telephone number. Do the same for any additional  plaintiffs named. Attach
additional sheets of paper as necessary.

| Plaintiff | Name | Claudia Casser |
|---|---|---|
| | Street Address | 17 Woodruff Way |
| | County, City | Warren County, Columbia |
| | State & Zip Code | New Jersey    07832 |
| | Telephone Number | 973-670-1750 |

B.    List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1

Name _Township of Knowlton_
Street Address _628 Route 94_
County, City _Warren County, Columbia_
State & Zip Code _New Jersey      07832_

Defendant No. 2

Name _Mayor and Committee for the Township_
Street Address _of Knowlton_
County, City _SAME_
State & Zip Code _____

Defendant No. 3

Name _Township of Knowlton Planning Board_
Street Address _____
County, City _SAME_
State & Zip Code _____

Defendant No. 4

Name _Municipal Clerk and Records Custodian_
Street Address _of the Township of Knowlton_
County, City _SAME_
State & Zip Code _____

See Attachment B

## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case  involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*
☒ Federal Questions          ☐ Diversity of Citizenship

☐ U.S. Government Plaintiff          ☐ U.S. Government Defendant

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _First, Fifth and Fourteenth Amendments._
_42 U.S.C. 1983 ; 42 U.S.C. 1985; 42 U.S.C. 2201-2202_

- 2 -

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

### III.   Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? _primarily in_ _Knowlton Township, Warren County_

B.   What date and approximate time did the events giving rise to your claim(s) occur? _2007 through 2018, specified in Attachment A hereto_

C.   Facts: _See Attachment A hereto_

**What happened to you?**

**Who did what?**

**Was anyone else involved?**

**Who else saw what happened?**

- 3 -

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. Deprived of: real property without compensation, access to the courts, and State causes of action

Also spoliation and fraudulent concealment depriving me of a full and fair opportunity to litigate state claims

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

See Attachment A hereto

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___27th___ day of ___April_____, 20 _18_ .

Signature of Plaintiff  _Claudia Casser_
Mailing Address  _17 Woodruff Way_
_Columbia, New Jersey_
_07832_
Telephone Number  _973-670-1750_
Fax Number (*if you have one*)  _____
E-mail Address  _ccasser@gmail.com_

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff:  _Claudia Casser_

ATTACHMENT B

Defendant No. 5:     Robert J. Greenbaum
                     263 Winding Hill Drive, P.O. Box 446
                     Warren County
                     Hackettstown, NJ  07840

ATTACHMENT A

1.   Notwithstanding any other possible construction of the
words in this Complaint, Plaintiff does not here intend to ask
this court to review or reverse the judgment of the state courts
in the action Plaintiff filed in New Jersey Superior Court on
March 5, 2010 (the "2010 Action"), including without limitation:
(a) the state court judgment that state courts will not
entertain on the merits state claims arising from or relating to
subdivision applications, unless a plaintiff first files an act
in lieu of prerogative writs within 45 days to appeal the
resolution approving or denying the subject subdivision
application; and (b) any alternative reason that the state court
relied upon to dismiss Plaintiff's taking and inverse
condemnation claims made under New Jersey law.

2.   Plaintiff does here intend to claim relief for the
"independent torts committed to obtain" these state court
judgments. Williams v. BASF Catalysts LLC, 765 F. 3d 306, 315
(3rd Cir. 2014).

3.   Plaintiff also does here intend to ask this court to
provide relief for federal taking claims accruing in 2016 when
Plaintiff exhausted the avenues available to her to obtain
compensation for the agricultural easements imposed on half her
land for the benefit of the public as a condition of the 2007
minor subdivision.

4.   At all relevant times, Plaintiff resided in the Township of
Knowlton.

5.   Defendants Township of Knowlton ("Township"), Mayor and
Committee for the Township of Knowlton ("Township Committee"),
Township of Knowlton Planning Board ("Planning Board"), and
Municipal Clerk and Records Custodian of the Township of

Knowlton ("Municipal Clerk") are collectively called the "Township Defendants."

6.   Defendant Robert Greenbaum represented the Township, Township Committee and Planning Board in an action Plaintiff filed against them and others in New Jersey Superior Court in 2010, concluded in 2016. He also represents all Township Defendants in an ongoing action Plaintiff filed against them in New Jersey Superior Court in 2013.

7.   In 1985, Plaintiff purchased an approximately 100-acre farm in Knowlton Township, Warren County, New Jersey (hereinafter the "Farm").

8.   Plaintiff purchased the Farm with the plan to use half as her residence and horse farm, and to subdivide the other half into lots for sale.

9.   At the time of purchase in 1985, the Farm was zoned "AR-3," meaning that primary uses were agricultural and residential, with many other conditional uses, and that development density was one residence per three acres. The farm was adjacent to properties zoned "AR-1." Accordingly, Plaintiff expected approximately 16 residential lots from the 50 acres she planned to subdivide.

10.  Prior to the time Plaintiff purchased the Farm, and at all times thereafter, the State of New Jersey had in place programs to purchase easements on farm acreage to preserve its agricultural use (hereinafter "agricultural easements"). The programs enforce the agricultural use through permanent deed restrictions that run with the land and the approval of "management plans" dictating the agricultural techniques that will be required on the land.

11.  At all relevant times, the primary agency of the State responsible for purchasing agricultural easements has been the

State Agriculture Development Committee (hereinafter, the "SADC").

12.  At all relevant times, the Township has actively participated in State, County and local programs to purchase agricultural easements on farmland located in the Township.

13.  In late 2003, the Township prepared an offer on Plaintiff's behalf to sell an agricultural easement on 75 acres of her land to the SADC for $10,000 per developable acre. However, by letter dated October 20, 2004, the State offered Plaintiff only $6,500 per developable acre. Plaintiff declined the offer.

14.  In 2005, in order to induce Plaintiff to sell agricultural easements on her land, the Township through Township Committee member and Knowlton SADC liaison Rene Mathez wrote Plaintiff that SADC offers in Knowlton had risen to "9-10K per acre for the development rights".

15.  In 1991, the Township enacted the "Farm Land Preservation Ordinance." The articulated purpose of the ordinance was to preserve "open space," especially agricultural land, and to maintain the Township's rural character, both for the benefit of the public.

16.  The Farm Land Preservation Ordinance "mandated" that, as a condition of subdivision, all applications for major or minor subdivision of tracts of 50 acres or more located in the Farmland Preservation zone or district (hereinafter "Mandatory Preservation Tracts"), must set aside and deed restrict half the tract as permanent open space, without compensation, and "cluster" all development on the other half.

17.  The Farmland Preservation zone or district covers most of the Township, including the Farm. As it has at all relevant times contained more than 50 acres, it has at all relevant times been a "Mandatory Preservation Tract."

18.   For purposes of the Farm Land Preservation Ordinance, the
Farm has at all times been similarly situated with other
Mandatory Preservation Tracts.

19.   The MLUL New Jersey Municipal Land Use Law ("MLUL")
governs, *inter alia*, land use ordinances and subdivisions.

20.   Municipalities and their agencies and representatives must
"act in strict conformity with the MLUL."

21.   Ordinances which do not conform with the MLUL are illegal
on their face and void.

22.   At the time of the enactment of the Farm Land Preservation
Ordinance, the MLUL forbade "clustering" in minor subdivisions.
Accordingly, because the Farm Land Preservation Ordinance
mandated "clustering" in minor subdivisions, it was illegal on
its face and void.

23.   This illegal provision was not cured until an amendment
enacted in July, 2013.

24.   According to the New Jersey Supreme Court case Shore
Builders v. Township of Jackson, 199 N.J. 449 (2009) ("Shore
Builders"), at the time of enactment of the Farm Land
Preservation Ordinance and at all times until amendment of the
MLUL in August, 2013, the only lawful means for a municipality
to require that land be deed restricted to agricultural or other
open space (other than in connection with a "Planned Unit
Development," which is not in issue here) was by paying
compensation to the landowner.

25.   By purporting to require applicants for subdivision of
tracts of 50 acres or more to deed restrict half the tract to
preserve agricultural or other open space, without compensation,
the Farm Land Preservation Ordinance was illegal on its face.

26.   This illegal provision was removed from the Farm Land
Preservation Ordinance with regard to minor subdivisions by

amendment enacted in July, 2013, but the illegal provision remains in it with regard to major subdivisions.

27.  The "Farm Land Preservation Ordinance," along with "clarifying" amendments over the years, was eventually codified primarily at Section 11-297.C (entitled "Clustering and open space management plan") and 11-297. D (entitled "Deed restrictions") of the Township of Knowlton Land Development Ordinance (Section 11-297.C and 11.287.D hereinafter collectively "Section 11-297").

28.  In 2007, Section 11-297 imposed, inter alia, the following "mandatory" conditions on Mandatory Preservation Tracts:

> i. "In order to minimize the impact that development will have within the Farmland Preservation Zone, clustering is mandatory for all tracts of 50 acres or more."
>
> ii. "Clustering shall be permitted only upon the submission and implementation of an open space management plan that is acceptable to the Planning Board."
>
> iii. "No increase in density shall be permitted when clustering."
>
> iv. "The minimum open space shall be 25 contiguous acres."
>
> v. "At least 50% of all tracts consisting of 50 acres or more shall remain as open space."
>
> vi. Where open space is "used for agriculture," the "open space management plan" must include "the procedures developed to ensure that agricultural work shall be done in accordance with a natural resource conservation plan, as approved by the Warren County Soil Conservation District and requirements in this chapter."
>
> vii. The plan must also include "A copy of the deed restriction covering the land to insure that it shall remain as farmland in perpetuity."

viii. "Subdivision plans shall be required to provide
appropriate deed restrictions for all subdivisions, and
specifically including the area of protected farmland and
open space. The legal instrument shall be drafted in
general accordance with the recommendations and language
contained in Appendix 4 of this chapter." Note 4: "Appendix
4, Conservation Easement, is included at the end of this
chapter."

ix. "The maximum tract density shall be established at the
time of the initial application for development of a tract.
This density shall not be exceeded in subsequent
subdivisions. All lots shall include a deed restriction
against further subdivision."

29.   The Section 11-297 provisions quoted in para. 28 above
impose restrictions substantially similar to the restrictions
contained in SADC agricultural easements in 2007.

30.   The SADC will not purchase agricultural easements on land
covered by provisions like those quoted in para. 28 above.

31.   In 2006, Plaintiff engaged an engineer and a land use
attorney to prepare and file an application for minor
subdivision on her behalf.

32.   Prior to filing the application, Plaintiff's initial
investment of out-of-pocket engineering, surveying and related
costs to prepare this application were in excess of $50,000.

33.   On March 9, 2007, Plaintiff's engineer filed an application
with the Planning Board for minor subdivision of her
approximately 100 acre farm into three approximately-10-acre
mini-farms and a 70-acre remainder, for a total of 4 lots on 100
acres.

34.   Plaintiff's plan put the existing house and two small
existing barns on one ten-acre lot, and included a development

plan to build one new house and a new barn on the 70-acre
remainder. There was no development plan regarding the other two
10-acre parcels; they were to be sold without improvements other
than existing sheds.

35.   Plaintiff's application stated that, upon subdivision, she
planned to sell an agricultural easement on 69 acres of the 70-
acre remainder to the SADC or other preservation agency, thus
preserving those 69 acres as agricultural open space.

36.   To achieve her plan to sell the development rights to 69
acres to the SADC, Plaintiff's application requested a variance
from Section 11-297, particularly from the provisions requiring
Plaintiff to permanently deed-restrict half her tract as open
space, cluster development on the other half, manage the open
space pursuant to a management plan the Township approved, and
install permanent preservation markers in her fields, and deed
restrict the resulting lots to a maximum number (hereinafter,
the "Variance").

37.   The Planning Board denied the Variance.

38.   The Planning Board denied the Variance without reference to
any adverse effects or impacts that Plaintiff's plan to divide
her farm into three ten-acre mini-farms and a 70-acre remainder
might create.

39.   Defendant Planning Board denied the Variance without
reference to any positive effects or impacts that Plaintiff's
sale of agricultural easements on 69 acres might create.

40.   Plaintiff vigorously protested.

41.   Plaintiff first protested by arguing that Section 11-297 on
its face must be unlawful, as it took agricultural easements
from applicants for minor subdivision without compensation.

42.   The Planning Board and its representatives, including
without limitation, its attorney, planner and individual
members, both during the hearings on Plaintiff's application for

minor subdivision and in communications outside the hearings, denied that Section 11-297 was unlawful, representing that:

a.      Section 11-297 was similar to the ordinances of other townships which had been held lawful;

b.      The Planning Board had uniformly applied the requirements of Section 11-297 to all prior Mandatory Preservation Tract subdivision applications;

c.      All prior applications for subdivision of Mandatory Preservation Tracts had been required strictly to conform with the requirements of Section 11-297;

d.      No prior applicant had been provided relief from the deed restrictions Section 11-297 required;

e.      No prior applicant had been provided relief from the management plan for open space that Section 11-297 required;

f.      All prior applicants had been required to place the permanent Section 11-297 open space restrictions in their deeds resulting from subdivision approval;

g.      No prior applicant had challenged the lawfulness of Section 11-297;

h.      Any attempt to challenge the lawfulness of Section 11-297 would be futile.

43. These representations were false. In fact:

a.      With regard to representation "a" above: Section 11-297 went far beyond any ordinance that had been held lawful, including without limitation by purporting to apply to minor subdivisions;

b.      With regard to representations "b" through "f" above: The Planning Board failed to apply ANY of the requirements of Section 11-297 to the following applications for minor subdivision of ten Mandatory Preservation Tracts: applications: 1993 Anderson; 1994 Smith; 1994 Terpstra; 1998

Geczi; 1999 Gecko; 1999 Paglia; 2000 Alvera Concepts; 2003
Mitchell; 2003 Walters; 2004 Brugler.

c.      In addition, the Planning Board provided partial
relief from the "mandatory" deed restrictions and full relief
from the management plan requirements of Section 11-297 for
the 2003 Rogers subdivision. These subdivisions constituted
ELEVEN OF THE TWELVE TOTAL Mandatory Preservation Tract
subdivisions approved by the Planning Board from the 1991
effective date of Section 11-297 until Plaintiff's 2007
application.

d.      With regard to representation "g" above, the
applicants of the 1993 Anderson application and 2003 Rogers
application challenged the "mandatory" provisions of Section
11-297. On information and belief, other Mandatory
Preservation Tract applicants also challenged these
provisions.

e.      With regard to representation "h" above, see paras.
22, 24 and 25 above.

44.  Section 40:55D-10 of the MLUL requires Planning Boards to
"include findings of fact and conclusions based thereon in each
decision on any application for development and shall reduce the
decision to writing."

45.  Section 40:55D-9.c of the MLUL requires municipal agencies,
including both the Township Committee and Planning Board, to
keep "[m]inutes of every regular or special meeting [which]
shall include… the action taken by the municipal agency, the
findings, if any, made by it and reasons therefor. The minutes
shall thereafter be made available for public inspection during
normal business hours at the office of the administrative
officer." (emphasis added)

46.  The New Jersey Open Public Meetings Act ("Sunshine Act")
requires governmental bodies, including planning boards and

township committees, to create and approve "reasonably comprehensible" minutes of executive sessions and to make such minutes "promptly available" to the public (with redactions as required). Specific information, including without limitation the names of attendees, the subjects discussed, and any decisions for actions to be taken must be recorded.

47. Except for the 1993 Anderson and 2004 Brugler applications, neither the minutes nor the resolutions of the Planning Board even mentioned the requirements of Section 11-297 in connection with the subdivisions listed in para. 25.b above.

48. Because they had participated in the applications listed in para. 43.b and c above, the Planning Board, its members, attorney, engineer, planner, and secretary knew that the representations in para. 42 were false.

49. Township Defendants made these misrepresentations in order to induce Plaintiff to redesign her minor subdivision to comply with their interpretation of Section 11-297 and to obtain agricultural easements on half her farm without compensation.

50. Township Defendants also made these misrepresentations in order to dissuade Plaintiff from challenging the lawfulness of Section 11-297 on its face and as applied to her 2007 minor subdivision.

51. Plaintiff then protested that, even if Section 11-297 was lawful, it was irrational to deny her request for Variance because her design would result in the preservation of 69 acres rather than approximately 50.

52. Plaintiff further argued that there must be some mechanism to approve the minor subdivision contingent upon the sale of the agricultural easements on 69 acres of the 70-acre remainder.

53. The Planning Board, its members, attorney, and planner then, both during the subdivision hearings and outside them,

denied that the Planning Board had the power to grant the
Variance, making the following representations:

a.    The Planning Board was legally required to impose the
Section 11-297 open space deed restrictions in the deeds
resulting from subdivision approval;

b.    The Planning Board had no authority to approve any
subdivision without open space deed restrictions in the deeds
resulting from the subdivision approval;

c.    The Planning Board had never approved, and lacked the
authority to approve, a subdivision contingent or conditioned
upon sale of an agricultural easement to any third party,
including the SADC;

d.    "No mechanism" existed or could be devised to approve
Plaintiff's subdivision without writing open space deed-
restrictions into the deeds resulting from the subdivision.

e.    "No mechanism" existed or could be devised to approve the
subdivision subject to sale of an agricultural easement to the
SADC or another entity.

f.    "No mechanism" existed or could be devised to enable the
Planning Board to approve subdividing off a 70-acre lot that
had no Section 11-297 deed restrictions, so Plaintiff could
sell an agricultural easement for 69 of those 70 acres to the
SADC or another entity.

g.    The Planning Board lacked the power to approve a
subdivision without a Section 11-297 management plan.

54.   These representations were false and the Planning Board,
its members, attorney, engineer, planner and secretary all knew
they were false. For just one example from the list of Mandatory
Preservation Tract applications listed in para 43.b above, about
which they all had actual knowledge in 2007 because most of the
members of the 2004 Planning Board were the same as those of the

2007 Planning Board, and the attorney, engineer, planner and
secretary were the same, and all of whom participated in the
original approval of the 2004 Brugler application, and
participated in ongoing matters regarding purchase of the
agricultural open space easements, was the Brugler minor
subdivision approved on June 22, 2004. Like Plaintiff's
application, Brugler's application requested that her 91 acre
tract consisting of Block 29 Lots 1 and 1A in the Farmland
Preservation zone/district (hereinafter the "Brugler
Subdivision"), be divided into four lots, two containing
approximately 2 acres each, one containing 52 acres, and one
containing 35 acres. The Resolution of Memorialization recites
that "it has been determined that the Applicant has complied
with all of the rules, regulations and requirements of the
Planning Board and that all of the required provisions of
compliance have been filed with the Planning Board." The
Resolution further notes that at the time of the Planning
Board's approval of Brugler, the Township Committee was engaged
in "concurrent attempts" "to purchase development rights of
lands included in this application". The Resolution states that
"[t]he submission of a formal open space plan is appropriately
waived due to the fact that the great majority of the subject
land area is about to have development rights removed by
purchase by the Township of Knowlton with resulting deed
restrictions for agricultural use only." Finally, the Resolution
states that "[t]his approval is conditioned upon the successful
closing on the purchase of the development rights to the subject
property by the Township of Knowlton. Failure of this
transaction to close shall result in a referral of this matter
back to the Planning Board for a further hearings[sic] on
compliance with open space requirements of the Knowlton Township
Ordinance."

55.   The relief that the Planning Board provided Brugler is precisely the relief that Plaintiff requested, and that the Planning Board, its members, attorney, engineer, and planner, all of whom participated in the Brugler approval, denied to Plaintiff, making the blatant misrepresentations listed in paras 42 and 53 above.

56.   Defendants made these misrepresentations in order to induce Plaintiff to redesign her minor subdivision to comply with their interpretation of Section 11-297 and to obtain agricultural easements on half her farm without compensation.

57.   The representations listed in paras. 42 and 53 above are hereinafter referred to as the "Planning Board Misrepresentations."

58.   The Planning Board Misrepresentations convinced Plaintiff that it would be futile to contest the denial of the Variance. Accordingly, in reliance on those misrepresentations, Plaintiff abandoned her plan to subdivide her farm into three ten-acre mini-farms and a 70-acre remainder, and sell an agricultural easement on 69 of those acres to the SADC.

59.   But for her belief in and reliance upon the Planning Board Misrepresentations, Plaintiff would never have abandoned her plan to subdivide off a 70-acre lot and sell an agricultural easement on 69 of those acres to the SADC. Instead, Plaintiff would have refused to agree to additional extensions of time for the Planning Board to approve her application, and would have immediately filed an action in New Jersey Superior Court contesting the denial of the Variance.

60.   Abandoning Plaintiff's original subdivision plan deprived her of the ability to sell an agricultural easement on 69 acres to the SADC or other agricultural conservation agency at the going price in Knowlton in summer, 2007, of approximately $10,000 per acre.

61.   Negotiating a new plan for minor subdivision over the next
four months with the Planning Board forced Plaintiff to pay
approximately $30,000 in out-of-pocket costs for resurveys and
redrawing maps and additional testimony beyond what her original
plan cost, as well as to develop an "open space" "management
plan."

62.   As described more fully in paras. 63-87 below, during
Plaintiff's negotiations with and monthly hearings before the
Planning Board and its attorney, engineer, and planner,
Defendants concealed documents from Plaintiff that would have
provided her facts contradicting the Planning Board
Misrepresentations, including the 2004 Brugler Subdivision
minutes and approval resolution, as well as the minutes and
resolutions associated with the other Mandatory Preservation
Tract subdivisions listed in paras. 43 b and c above.

63.   First, in order to help construct the "management plan" for
her horse farm that the Planning Board insisted upon, Plaintiff
requested from the Planning Board in a hearing in June of 2007
copies of the "management plans" other applicants had provided.

64.   The Planning Board provided only the woodland/forestry
"management plan" from the 2004 Paglia subdivision, which was
not helpful to developing a horse farm management plan.

65.   The Planning Board and its members, attorney, engineer,
planner and secretary intentionally concealed from Plaintiff the
fact that this forestry management plan was the only "open
space" management plan the Planning Board had ever required
pursuant to Section 11-297. They falsely stated to Plaintiff
that there were many other management plans, but they were only
providing the Paglia plan because it was the only one they could
easily find.

66.   Under New Jersey Law, municipalities, their agencies and
representatives, including without limitation municipal clerks,

board members, attorneys, planners and engineers, have the duty of candor to the public. This duty requires them, inter alia, to answer questions from the public, including applicants for subdivision, in good faith and without evasion. E.g., University Cottage Club of Princeton New Jersey Corp. v. DEP, 191 N.J. 38, 921 A.2d 1122, 1134 (2007).

67.   Under New Jersey Law, municipalities, their agencies and representatives have the duty to "turn square corners" in their dealings with the public, including during litigation with members of the public. E.g., Klumpp v. Borough of Avalon, 202 N.J. 390, 997 A.2d 967 (2010); CBS Outdoor, Inc. v. Lebanon Plan. Bd., 999 A. 2d 1151, 1165 (App.Div. 2010).

68.   Although Plaintiff was not aware of Township Defendants' duties of candor and to "turn square corners," she was unsatisfied with what she viewed as an unhelpful response. Accordingly, she looked for a more formal way to request records.

69.   Because Plaintiff was unfamiliar with the New Jersey Open Public Records Act (OPRA) and overwhelmed by the whole subdivision application process, she asked her son, Lucas Pratt, to find out how to submit a request on her behalf. He finally submitted that OPRA request to the Municipal Clerk on August 29, 2007 (hereinafter the "First 2007 OPRA Request"). That request included a request for a copy "of all Open Space Management Plans filed for agricultural Open Space" and a copy "of all deed restrictions for agricultural Open Space."

70.   Under OPRA, records custodians are required to search all current and stored records, and to provide access to the public records to the requestor within no more than 10 days unless the records fall within specific exceptions. In the event such an exception applies, OPRA requires records custodians to note the exception on a copy of the OPRA request and provide that within

10 days to the requestor. In the event of records in storage
that will require more than 10 days to produce, records
custodians may specify extra time they need to provide access to
the records in storage, but must provide the records within the
additional time stated.

71.  Personally following up on the First 2007 OPRA Request,
Plaintiff asked the Municipal Clerk to make inquiries of the
Planning Board, the Planning Board Secretary, Planning Board
counsel Mark Hontz, and former Planning Board and then-current
Board of Adjustment counsel Roger Thomas.

72.  In responding to Plaintiff's first OPRA request, the
Municipal Clerk informed Plaintiff that she did in fact consult
with the Planning Board, the Planning Board Secretary, the
Planning Board counsel Mark Hontz, the former Planning Board and
then-current Board of Adjustment counsel Roger Thomas, the
Township attorney Richard Cushing, Township Committee member
Rene Mathez, and Township Committee Member Frank Van Horn.

73.  All of these persons had personal knowledge of most if not
all of many subdivision applications listed in paras. 43. b and
c above, that the Planning Board, without requiring application
for a variance, approved without imposing the "mandatory"
requirements of Section 11-297 from which Plaintiff sought
relief via her formal application for the Variance.

74.  Defendants responded to Plaintiff's first OPRA request by
providing her the boxes containing the applications of four
applicants: the 2003 Rogers application that did not include a
management plan or metes and bounds deed restrictions or
easements, but did include a "floating" deed restriction; the
2004 Paglia application which included both a management plan
and a metes and bounds deed restriction, and two applications
which were not Mandatory Preservation Tracts and so which were
not similarly situated to Plaintiff's tract.

75.   Plaintiff told the Municipal Clerk that she was unsatisfied
with this response to her first 2007 OPRA request, because, from
the Planning Board's representations, she expected at least a
dozen Mandatory Preservation Tract examples of management plans
and deed restrictions. See Clerk's handwritten notes at the
bottom of OPRA exhibit PA532.

76.   After consultation with members and attorneys representing
the Planning Board and Township Committee, the Municipal Clerk
orally explained to Plaintiff that this was all she could
provide in response to Plaintiff's OPRA request because it was
just too hard to locate management plans and deed restrictions
without a large amount of work the Township was unwilling to
undertake.

77.   At that time, Plaintiff did not know that the Municipal
Clerk's response was not a lawful excuse for denying access to
records under OPRA, and believed it to be in good faith.

78.   In fact, the Township Clerk provided Plaintiff her "too
much work" excuse to conceal the fact that there were NO other
management plans or deed restrictions other than those
associated with the 2004 Paglia and 2003 Rogers applications.

79.   Defendants caused the requests to be answered in bad faith
in order to: (a) conceal the fact that Plaintiff was being
treated substantially differently from similarly situated prior
applicants; (b) persuade her to create and manage the
agricultural easements for the benefit of the public without
compensation; and (c) quell any legal challenge to Section 11-
297.

80.   At that time, Plaintiff was so convinced of the truth of
the Planning Board Misrepresentations, trusting the Planning

Board's and their professionals' representations[1] that the
Planning Board had, in fact, required all prior Mandatory
Preservation Tract applications to comply with the "mandatory"
provisions of Section 11-297 from which the Planning Board
denied Plaintiff variance relief, that Plaintiff was sure she
could help the Municipal Clerk locate more subdivision files
containing Section 11-297 management plans and deed
restrictions.

81. Accordingly, on September 25, 2007, Plaintiff filed a
second OPRA request, this time requesting "All Planning Board
minutes of applications for subdivision subject to the
clustering provisions of the Knowlton Land Development
Ordinance."

82. Plaintiff explained to the Municipal Clerk that all
subdivisions of tracts over 50 acres in the Farmland
Preservation Zone, which fact would have to be reflected in the
minutes regarding the subdivisions, were subject to the Section
11-297 "clustering" provisions. So all the Planning Board
Secretary or Municipal Clerk would have to do was skim the
monthly Planning Board meeting minutes, which supposedly were
all filed in binders in the Planning Board Secretary's office,
and copy the minutes of meetings that mentioned subdivisions of
tracts in excess of 50 acres in the Farmland Preservation Zone.
Then Plaintiff could write a new OPRA request identifying by
name, Block and Lot number the subdivisions about which she
wanted further information.

83. Once again, the Municipal Clerk consulted with the Planning
Board, the Planning Board Secretary, Township Committee attorney

---

[1] "Men naturally trust in their government, and ought to do so,
and they ought not to suffer for it." CBS Outdoor, Inc. v. Lebanon
Plan. Bd., 999 A. 2d 1151, 1165 (App.Div. 2010), quoting *Menges v.
Dentler,* 33 Pa. 495, 500 (1859).

Richard Cushing, Planning Board counsel Mark Hontz, former
Planning Board and then Board of Adjustment counsel Roger
Thomas, Township Committee member Renee Mathez, and Township
Committee member Frank Van Horn.

84. However, as shown by the Municipal Clerk's handwritten
notations on her copy of Plaintiff's September 25, 2007 OPRA
request ("Talked to Claudia 11-1-07, she says she still wants
the above plus the Deed Restriction the 1st [2007 OPRA]
Request."), Defendants did not timely provide the records
requested. Nor did Defendants ever support this failure to
provide documents by citing to any law exempting the records
from disclosure. In fact, they did not provide Plaintiff access
to any of these records until 2010.

85. By evading their duties under OPRA and their duties of
candor and turning square corners, all of which required
Township Defendants to respond in good faith to Plaintiff's two
2007 OPRA requests, Township Defendants concealed from her the
documents that would have proven the Planning Board
Misrepresentations false.

86. A good faith response to Plaintiff's two 2007 OPRA requests
would have provided Plaintiff the minutes proving that the
Planning Board had granted the relief Plaintiff requested from
Section 11-297 to all but two other Mandatory Preservation Tract
applicants, leading to discovery of the associated Planning
Board resolutions, all proving the Planning Board
Misrepresentations false.

87. Had Plaintiff known the Planning Board Misrepresentations
were false, she immediately would have filed an action in
Superior Court to challenge the Planning Board's imposition of
the Section 11-297 requirements as a condition of approval of
her minor subdivision.

88.   In fact, in 2010, as soon as Plaintiff was finally provided access to the documents Defendants concealed from her in 2007, and discovered that the Planning Board Misrepresentations were false, Plaintiff immediately filed the 2010 Action in Superior Court.

89.   But for the Planning Board Misrepresentations, and but for Defendants' failure to respond in good faith to Plaintiff's 2007 OPRA requests, depriving her of the documents necessary to prove the Planning Board Misrepresentations false, Plaintiff would have refused to accept the Planning Board's rejection of her original minor subdivision plan.

90.   But for the Planning Board Misrepresentations, and but for Defendants' failure to respond in good faith to Plaintiff's 2007 OPRA requests, depriving her of the documents necessary to prove the Planning Board Misrepresentations false, Plaintiff would have timely filed an action in lieu of prerogative writs to contest deprivation of agricultural easements without compensation.

91.   But for this failure timely to file an action in lieu of prerogative writs, the New Jersey Courts would have heard Plaintiff's 2010 Action claims on the merits, instead of barring her claims from the state courts for failing timely to file that prerogative writs action.

92.   Instead, deceived by Defendants' misrepresentations and concealment of documents, Plaintiff "gave up fighting" the deed restrictions and management plan, though she continued to protest the conditions of the approval the Board offered.

93.   The resolution approving Plaintiff's minor subdivision into one 25-acre lot, two approximately 10-acre lots, and an approximately 56-acre remainder was memorialized in October, 2007 (hereinafter the "Resolution").

94.   At the meetings discussing and adopting the Resolution, Plaintiff protested that the Planning Board attorney's characterization of what happened at hearings on her minor subdivision was false and self-serving. Plaintiff was not provided the drafts of the Resolution prior to those meetings. Plaintiff requested that the adoption of the Resolution be delayed so that her attorney could comment upon the text, but the Planning Board denied that request.

95.   The Resolution contained as conditions of approval the very requirements of Section 11-297 from which the Variance specifically requested relief.

96.   Specific conditions of the Resolution, as interpreted by Mr. Rodman, the Township Engineer, and Mr. Hontz, the Planning Board attorney, required Plaintiff to, among other things:

    a. install and maintain 16 permanent, physical preservation markers on her land and permit the Township Engineer to enter her land to inspect them;

    b. impose agricultural "open space" easements to preserve half her land for the benefit of the public, in a form approved by Mssrs. Rodman and Defendant Hontz, and file the easements with the deeds perfecting the minor subdivision;

    c. insert permanent deed restrictions, in a form approved by Defendant Rodman and Defendant Hontz, into the deeds filed to perfect the subdivision, inter alia, (i) describing and enforcing the agricultural easements and (ii) restricting future subdivision of each tract; and

    d. farm the preserved land according to an approved management plan.

97.   These Section 11-297 conditions were in no way related to or proportional to any environmental, traffic or other impacts of Plaintiff's plan to divide her 100-acre farm into three ten-acre mini-farms and a 69-acre remainder.

98.   Neither the Planning Board nor any other person has ever
claimed that these Section 11-297 conditions were in any way
related to or proportional to any environmental, traffic or
other impacts of Plaintiff's plan to divide her 100-acre farm
into three ten-acre mini-farms and a 69-acre remainder.

99.   The stated purpose and result of the application of Section
11-297 conditions to Plaintiff's minor subdivision was to
preserve approximately 50 acres of "open space" and agriculture
in Knowlton Township for the benefit of the public.

100. Plaintiff's original plan would have resulted in the
preservation of 69 acres. Accordingly, it was irrational for the
Planning Board to reject it.

101. To comply with those conditions of approval, Plaintiff
spent tens of thousands of dollars (i) redrawing her lot lines;
(ii) preparing and filing deeds describing by metes and bounds
open space easements restricted to agricultural use, (iii)
installing permanent preservation markers; and (iv) creating and
adhering to a management plan.

102. Due to long delays in receiving approvals from the Planning
Board engineer, Plaintiff was not permitted to file the deeds
perfecting the subdivision until February 13, 2009.

103. The final condition, installing permanent physical
preservation markers on Plaintiff's farm to the Planning Board
engineer's satisfaction, was completed in October, 2009.

104. In late December, 2009, Plaintiff happened across the 2009
New Jersey Supreme Court decision Shore Builders. Shore Builders
held that municipalities have no power to require that open
space be set aside as a condition of development applications,
including subdivisions, other than PUD designs.

105. Shore Builders stated that municipalities wishing "to
create or encourage the preservation of open space" have the
power to proceed and should proceed under N.J.S.A. 40:55D-44,

which requires "the payment of just compensation to the owner of the affected parcel."

106. At the Township Committee meeting on January 28, 2010, Plaintiff advised the Committee that Shore Builders proved that the Planning Board acted unlawfully when it required Plaintiff to set aside half her land as open space without compensation. Plaintiff requested negotiation of compensation for the damages she incurred as a result of this unlawful action.

107. Immediately after this meeting, searching for other affected applicants to join in her protest to the Township Committee, Plaintiff filed an OPRA request for the same documents she sought and was denied in 2007, viz., minutes and resolutions relating to other Mandated Preservation Tract applications for subdivision.

108. By letter dated February 5, 2010, the Municipal Clerk again refused to provide the requested records, but instead suggested that Plaintiff herself search "the planning board vault on Tuesdays and Thursdays when staff is available to assist you."

109. The Municipal Clerk said nothing about Planning Board minutes, which were not stored in the planning board vault.

110. At that time, Plaintiff was not aware that this was an improper response under OPRA, and so she spent days searching the un-indexed boxes in the vault.

111. As a result of this search, Plaintiff discovered that there was no one to join in her protest to the Township Committee, because the Planning Board had granted all but one or two other Mandated Preservation Tract subdivision applicants the relief they denied Plaintiff from the "mandatory" open space deed restrictions and management plan.

112. Upon discovering that Defendants had lied to her and concealed documents from her all along, Plaintiff promptly filed the 2010 Action (i) to declare Section 11-297 illegal on its

face and as applied to Plaintiff's 2007 minor subdivision; to either cancel the agricultural easements and other unlawful conditions the Planning Board imposed on her minor subdivision or obtain compensation for them; and (iii) for damages associated with the unlawful imposition of those easements on her farm. Unfamiliar with this area of the law, Plaintiff pled multiple theories against multiple defendants.

113. In response to the Township Committee attorney's statement during pre-filing negotiations that if Plaintiff pled any federal claims, he would remove Plaintiff's pro se action to federal court, with all the attendant distance, time, money and complexity involved in litigating there, Plaintiff was careful to plead only State claims.

114. Multiple times after filing the 2010 Action, Plaintiff specifically informed Defendants and the court both orally and in briefs that she was reserving all her federal claims, especially her federal taking claim, which in any case would not become ripe unless and until the State denied her compensation.

115. Defendants never objected to this reservation of rights.

116. Shortly after Plaintiff filed the 2010 Action, but in no event later than the summer of 2010, Township Defendants began "reorganizing" their storage vaults, including where Planning Board files and Township Committee files were stored, and , shredded thousands of pages of documents. They even hired additional personnel to help.

117. On information and belief, many of the shredded documents were relevant to Plaintiff's claims in the 2010 Action.

118. Plaintiff's First Request to Produce Documents dated September 2, 2010, was served on Township Defendants that week.

119. Despite Plaintiff's repeated requests, for over a year, Defendant Greenbaum failed and refused to respond to that Request to Produce.

120. Meanwhile, on May 5, 2011, Judge O'Connor granted in part
and denied in part the motions of individual "professional"
attorney and planner defendants to dismiss the 2010 Action.
(Exhibit One hereto, hereinafter the "May 5, 2011 Order."

121. Judge O'Connor first held that Counts 1 through 11 of the
12 Counts applied only to the Township, the Planning Board, and
their members, and not to the individual "professional"
defendants.

122. With regard to Count 12, Judge O'Connor dismissed all
theories of liability against the individual "professional"
defendants other than fraudulent concealment.

123. Critical to this federal action, Judge O'Connor dismissed
Plaintiff's New Jersey Civil Rights Act claims based on Rezem
Family Assocs., L.P. v. Borough of Millstone, 423 N.J. Super.
103, 30 A.3d 1061 (App.Div. 2011), cert. denied, 208 N.J. 366
(2011) ("Rezem"), decided by the Appellate Division a year after
Plaintiff filed the 2010 Action and weeks after argument of the
"professional" defendants' motion.

124. Judge O'Connor stated that "Like Rezem, the plaintiff in
the within matter did not pursue prerogative writs remedies when
her variance was denied, and nor did plaintiff seek to challenge
the validity of the ordinance. She did not indicate in her
complaint that pursuing such remedies would have been futile
under the law. Accordingly, by failing to exhaust judicial
remedies, the plaintiff's complaint in the within matter
'improperly converts a zoning case into a civil rights case.'
Rezem, supra, at 2011 N.J. Super. LEXIS 64. Therefore, the civil
rights claims have to be dismissed for failure to state a
claim."

125. Through their attorney Defendant Greenbaum, the municipal
entities and individual board members then filed a motion for
partial summary judgment to dismiss all claims against them,

138. Accordingly, after her February, 2010 foray into one Township vault in response to the 2010 OPRA request Plaintiff filed before filing the 2010 Action, Plaintiff was not provided any realistic opportunity to find responsive documents in the Township's vaults.

139. Defendant Greenbaum refused to permit Plaintiff to depose Mr. McGroarty.

140. Defendant Greenbaum refused to provide Plaintiff drafts of the McGroarty Report.

141. In the pre-trial information exchange letter dated July 22, 2012, Defendant Greenbaum listed Mr. McGroarty as a witness to be called to testify in the municipal defendants' case in chief.

142. In the pre-trial information exchange letter dated July 22, 2012, Defendant Greenbaum listed as exhibits upon which he would rely many of the documents he refused to provide Plaintiff in response to her Notice to Produce dated September 2, 2010.

143. Mr. Greenbaum then filed a second motion for summary judgment dismissing all the remaining claims in the 2010 Action complaint.

144. By Order and Decision dated May 25, 2012 (hereinafter the "May 25, 2012 Order," Exhibit Three attached hereto), Judge O'Connor denied without prejudice Defendants' second motion for summary judgment.

145. With regard to Plaintiff's claims for compensation for taking and inverse condemnation, Judge O'Connor specifically found that the evidence provided by Defendants was insufficient to conclude that a taking or inverse condemnation had not occurred under New Jersey law (as stated in paras. 113-115 above, the 2010 Action contained no claims under federal law, which Plaintiff specifically reserved, and to which reservation defendants never objected).

146. Judge O'Connor then scheduled Counts 1, 2, 3, 4, 8, 9 and
11 for trial in July, 2012.

147. On July 24, 2012, Plaintiff filed her pre-trial memorandum
and, inter alia,a motion in limine on July, 2012 to declare
Section 11-297 unlawful on its face.

148. At oral argument, Judge O'Connor requested additional
briefing and hearings on the issue of whether the lawfulness of
Section 11-297 should be determined under New Jersey declaratory
judgment or prerogative writs standards.

149. The parties completed their rounds of briefs by September
14, 2012, but oral argument was delayed until January 24, 2013.
At that second hearing, the Trial Court requested additional
briefing, with oral argument to be held again on February 11,
2013.

150. On February 4, 2013, Defendant Greenbaum received and
reviewed Plaintiff's final brief for the February 11 hearing.

151. However, on or before February 6, 2013, Defendant Greenbaum
intentionally took on a real estate sale for a client adverse to
Judge O'Connor's interests.

152. On February 7, 2013, Defendant Greenbaum made ex parte
contacts with Judge O'Connor.

153. On that same day, Judge O'Connor recused herself from the
2010 Action, and that evening Plaintiff received a call from the
court stating that Judge O'Connor recused herself.

154. On that same day, Defendant Greenbaum informed the Township
about the success of his ploy to make Judge O'Connor recuse
herself.

155. On the morning of February 8, 2013, Plaintiff called the
court to protest the recusal, and was told by the assistant
administrator in Warren County that the real estate sale was
contentious. Plaintiff then emailed Ms. Ibrahim, asking her to

forward the email to Judge Ciccone, her protest regarding to
Defendant Greenbaum's actions. Plaintiff received no response.

156. On February 11, 2013, the day the third oral argument on
the critical issue of the facial legality of Section 11-297 was
scheduled, the case was instead transferred to Somerset County
and assigned to Judge Coyle.

157. Despite Plaintiff's efforts to have Judge Coyle decide
Plaintiff's long-pending, critical motion regarding the facial
legality of Section 11-297, he ultimately refused to do so.

158. Meanwhile, on January 22, 2013, the Planning Board approved
the minor subdivision of Block 3, Lot 3, which was a Mandated
Preservation Tract subject to the "mandatory" requirements of
Section 11-297 (hereinafter the "2013 Anderson Subdivision").

159. No mention of Section 11-297 was made in either the
Planning Board minutes or resolutions regarding the 2013
Anderson Subdivision, much less mention of any reasons for
failing to apply its "mandatory" requirements to this Mandated
Preservation Tract.

160. Plaintiff learned about the January 22, 2013 Planning Board
approval of the 2013 Anderson shortly thereafter and called the
Township to inquire about the reason for the failure to apply
"mandatory" Section 11-297 to it. Plaintiff was given no reason.

161. On February 14, 2014, Defendant Greenbaum traveled to the
Township to get a tape machine to review the Planning Board's
hearing on the 2013 Anderson Subdivision.

162. Plaintiff attended the next meeting of the Planning Board,
on February 26, 2013, where the 2013 Anderson Subdivision
approval was memorialized. (Plaintiff later attempted to include
reference to this subdivision approval in her proposed First
Amended Complaint described in paras. 254-261 below, but her
motion to amend her 2010 complaint was denied).

163. At the February 26, 2013 Planning Board meeting, Plaintiff objected to the approval and memorialization of the approval of the 2013 Anderson Subdivision without the MLUL-required statement of reasons for failing to apply the "mandatory" provisions of Section 11-297.

164. Plaintiff specifically asked Defendant Planning Board whether this failure to apply or even mention the "mandatory" provisions of Section 11-297 meant that the Planning Board admitted it was unlawful on its face.

165. In violation of their duty of candor, the Planning Board and its attorney and professionals refused to reply, and further refused to state any reason whatsoever for their failure to apply the "mandatory" provisions of Section 11-297 to the 2013 Anderson Subdivision or even to mention them in the minutes or resolutions associated with it.

166. At the February 26, 2031 meeting, the Planning Board also approved the re-subdivision of the Paglia Mandatory Preservation Tract (hereinafter the "2013 Paglia Subdivision"), granting Paglia a lot in excess of those permitted under any section of the Land Use Law other than Section 11-297.

167. Plaintiff stated that if the Section 11-297 was illegal, then so was the approval of the 2013 Paglia Subdivision. She further stated that the Planning Board had to be consistent in applying "mandatory" 11-297. She asked how they could decide without explanation in their minutes or resolutions to exempt the 2013 Anderson Subdivision in January, and then, again without explanation in their minutes or resolutions, turn around and apply Section 11-297 to the 2013 Paglia Subdivision in February?

168. The Planning Board and its attorney refused to answer Plaintiff's questions or comment on Plaintiff's statements. The Planning Board further refused to discuss Plaintiff's statements

with their attorney prior to voting to approve the 2013 Paglia
Subdivision, despite the request of some members to confer with
their attorney in executive session.

169. On February 27, 2013, Plaintiff filed and served a motion
for leave to amend the complaint in the 2010 Action.

170. On February 28, 2013, the Township Committee held a closed
executive session, never made public until after Plaintiff filed
claims challenging the Township's violation of OPRA and OPMA in
2016. The Township Committee discussed "land use litigation and
land use ordinances" and asked Defendant Municipal Clerk to
invite Defendant Greenbaum to "attend the next Township
Committee meeting for discussion of the issues."

171. Starting no later than March 4, 2013, in order to gain a
litigation advantage in the 2010 Action, Defendant Greenbaum
began to discuss amendment of Section 11-297 with Mr. McGroarty,
the expert planner who wrote the report served on Plaintiff in
September, 2011, and whom Plaintiff was never permitted to
depose.

172. Calls and/or correspondence and/or meetings with Mr.
McGroarty regarding the issue of ordinance amendment to conform
it to law and to gain a litigation advantage occurred on at
least the following dates in 2013: March 4, March 5, March 6,
March 29, April 1, April 2, April 5, April 8, April 9, April 12,
April 13, April 15, April 16, April 18, April 19, May 5, May 30,
May 31, June 13, June 14, June 19, July 1, July 5.

173. On March 5, 2013, according to billing records, the
Township Committee attorney, the Planning Board attorney, and
Defendant Greenbaum conferred about "option regarding ordinance
amendments." The Township Committee attorney then made a
"detailed report to Mayor & Governing Body."

174. On March 5, 2013 after this discussion regarding options for ordinance amendments, Defendant Greenbaum called Mr. McGroarty regarding same, and the next day wrote him.

175. On March 14, 2013, the Township defendants filed an opposition to Plaintiff's motion for leave to amend the complaint in the 2010 Action and filed a third motion for summary judgment to dismiss the claims Judge O'Connor had scheduled for trial in 2012, including without limitation Plaintiff's claim that Section 11-297 was unlawful on its face, the subject of Plaintiff's motion in limine, which had been sub judice since July, 2012, and argued and briefed again in both January and February, 2013.

176. On March 18, 2013, Plaintiff opposed the Township Defendants' cross-motion for summary judgment.

177. On March 22, 2013, oral argument was held on Plaintiff's motion to amend the 2010 Action Complaint and the Township defendants' motion for summary judgment on all claims.

178. Prior to March 26, 2013, a "joint meeting" of Defendant Planning Board and the Township Committee was scheduled for April 8, 2013, "to discuss pending litigation" (hereinafter the "Joint Meeting"). In closed executive session held on March 26, 2013, Chairman Taylor of Defendant Planning Board informed the rest of its members that the meeting would "be noticed and all the Board Members are invited to attend." According to its minutes, the invitation to this joint closed April 8 meeting was the sole subject of the March 26, 2013 closed executive session.

179. At the Township Committee meeting held on March 28, Plaintiff made a statement regarding her concern that the Planning Board was acting illegally. She stated that either (i) Section 11-297 was legal, in which case the Planning Board's failure to apply it to the 2013 Anderson Subdivision was illegal; or (ii) Section 11-297 was illegal, in which case the

Planning Board's application of it to the 2013 Paglia
Subdivision was illegal.

180. At that meeting, Plaintiff further stated her concern that
neither the minutes nor the resolutions of the Planning Board
included the information that the MLUL required. She further
stated that both of the approvals were part of a pattern of the
Planning Board's violation of the MLUL, including without
limitation their failure to keep adequate minutes of their
findings and reasons for actions.

181. Plaintiff asked whether the Township Committee supported
the Planning Board in these actions, and they refused to
comment, except for one member who said she did not know about
these actions.

182. Starting no later than April 1, 2013, Mr. McGroarty began
to prepare to attend the Joint Meeting in order to help Mr.
Greenbaum persuade the Township Committee and Planning Board to
amend Section 11-297 to make it comply with law in such a way as
to gain a litigation advantage in the 2010 Action.

183. Meanwhile, in Defendant Greenbaum's 2010 Action filings (a)
opposing Plaintiff's motion for leave to amend the complaint and
(b) supporting his own motion for summary judgment on all
remaining claims in the 2010 Action, including Plaintiff's
claims that Section 11-297 was illegal on its face and as
applied to her minor subdivision, Defendant Greenbaum was
representing to Judge Coyle that Section 11-297 was lawful on
its face and as applied to minor subdivisions.

184. As described in more detail below, but for Defendants'
deliberate concealment from the court of their research and
knowledge that Section 11-297 was unlawful on its face during
their opposition to Plaintiff's motions for declaration of the
illegality of Section 11-297 and motion to amend her complaint,
as well as in their own motion for summary judgment, and in

their opposition to Plaintiff's motion for reconsideration of the April 12, 2013 Order described below, Plaintiff would have prevailed on the central legal issue in the 2010 Action: that Section 11-297 was unlawful on its face.

185. The importance to the 2010 Action of Defendants' concealing their research and knowledge of the illegality of Section 11-297 from Plaintiff and the court, and the importance of amending Section 11-297 without disclosing the true reason why, is underlined by the facts stated in paras. 172-174, 178, 182 above and paras. 186-188, 192, 197-198, 212-218, 222-228, and 231-233 below.

186. Prior to attending the April 8, 2013 Joint Meeting, according to his own billing statements, Mr. McGroarty spent at least 9.25 hours preparing for it.

187. On April 8, 2013, the Planning Board and Township Committee met with Defendant Greenbaum and Mr. McGroarty in closed executive session to discuss the unlawfulness of Section 11-297 and how to amend it to gain a litigation advantage in the 2010 Action.

188. In violation of the MLUL and Sunshine Act, the Planning Board failed to take adequate minutes of the April 8, 2013 joint closed executive session including: (a) the fact that it was a joint meeting with the Township Committee; (b) who attended; and (c) that the Township Committee there requested Mr. McGroarty to prepare recommendations to the Planning Board to revise Section 11-297 to conform it to law and to gain a litigation advantage in the 2010 Action.

189. In documents filed in state court in connection with an OPRA claim brought by Plaintiff in 2016, Defendants Township Committee and current Municipal Clerk's office claim that, in violation of the Sunshine Act and MLUL, no minutes of the Joint Meeting were taken on behalf of the Township Committee, no draft

minutes were prepared, none approved, and no documents relating to the minutes that the Sunshine Act and MLUL required them to keep and disclose to the public exist.

190. Lisa Patton, the now-deceased former Municipal Clerk and Township Committee Secretary, testified in her January 16, 2018 deposition (the "Patton Deposition") that she personally took extensive notes of the April 8, 2013 Joint Meeting, that she had prepared draft minutes for it, and that the Township Committee had approved those minutes in 2013.

191. A motion approving the minutes of April 8, 2013 is recorded in the minutes of the Township Committee public meeting of May 13, 2013.

192. On information and belief, in order to gain a litigation advantage, Defendants destroyed these approved Township Committee minutes of the Joint Meeting.

193. In response to OPRA claims made in 2016, Defendants repeatedly claimed that the following Township Committee executive session minutes held during 2013, which sessions Plaintiff believes related to Plaintiff's state litigation, were never drafted or approved and do not exist: April 25, May 13, May 23, June 10, July 8.

194. In the Patton Deposition, the former Municipal Clerk testified that she drafted minutes of those executive meetings, submitted them to the Township Committee, and believed they approved them.

195. The public meeting minutes of the Township Committee record motions approving those minutes as follows: April 25, May 13 and May 23 were approved July 8, 2013; June 10 was approved July 25, 2013; and July 8 was approved August 22, 2013.

196. Through further OPRA requests which Plaintiff filed in 2018 based on information provided in the Patton Deposition, Plaintiff subsequently acquired an electronic copy of the May

other than fraudulent concealment, on the basis of the May 5,
2011 Order.

126. At a hearing on August 31, 2011, Judge O'Connor dismissed
Counts 5, 6, 7, 10 and 12 (excluding the fraudulent concealment
cause of action she found pled in Count 12) against the
municipal entities and board members, and denied the motion with
regard to Counts 1, 2, 3, 4, 8, 9, 11, and fraudulent
concealment (hereinafter the "August 31, 2011 Order," Exhibit
Two hereto).

127. In the course of the hearing, Judge O'Connor also ordered
Defendant to respond to Plaintiff's First Request to Produce.

128. Thereafter, Plaintiff settled her claims against the
individual "professional" defendants.

129. Defendant Greenbaum then represented all the remaining
defendants in the 2010 Action.

130. Two days after the August 31, 2011 Order, less than 30 days
before discovery closed in the 2010 Action, Defendant Greenbaum
provided Plaintiff a copy of an expert's report purporting to
distinguish all the prior Mandatory Preservation Tract
subdivisions from Plaintiff's subdivision, and to claim that
Plaintiff was not deprived of substantial property when the
Planning Board and Township obtained agricultural easements
without compensation as a condition of her minor subdivision
(hereinafter the "McGroarty Report.")

131. On September 27, 2011 Plaintiff requested extension of the
discovery period to file interrogatories and requests for
admission, as well as depositions. Plaintiff especially wanted
to depose Mr. McGroarty, to dispute the basis of the McGroarty
Report. Defendant Greenbaum opposed any discovery relating to
the McGroarty Report and any extension of the discovery period,
and Plaintiff's request was denied.

132. Despite multiple efforts, continuing into 2012, Defendants blocked Plaintiff's right to discovery regarding the McGroarty Report.

133. On September 28, 2011, <u>two days</u> before the end of the discovery period, Defendant Greenbaum finally filed his one and only response to Plaintiff's First Request to Produce Documents dated September 2, 2010, more than a year before. Defendants provided Plaintiff no documents.

134. Instead, Defendant Greenbaum refused to produce any of the documents on which Defendants relied to deny specified paragraphs in the 2010 Action complaint on the basis that they were all work product, even though the documents requested documents in existence BEFORE PLAINTIFF FILED THE 2010 ACTION. Instead, Defendant Greenbaum insisted that the only responsive document was the Mr. McGroarty Report, which DID NOT EXIST at the time Plaintiff filed her Request to Produce Documents.

135. With respect to the bulk of the other requests to produce, Defendants responded, <u>two days</u> before the end of the discovery period, that "all responsive documents are available for inspection in the vault of the Township of Knowlton, 628 Route 94, Columbia, New Jersey 07832, and will be produced as those records are maintained in the usual course of business."

136. However, given the Township Defendants' recent "reorganization" and shredding of documents, this was a sham response.

137. In addition, as Plaintiff discovered in 2018, many of the critical documents responsive to Plaintiff's Notice to Produce, including without limitation minutes of public and executive sessions of the Planning Board and the Township Committee, were <u>not</u> stored in the Township vaults, but in files in the locked offices of the Planning Board Secretary and the Town Clerk and on electronic storage media.

23, 2013 Township Committee executive session minutes that
Defendants had claimed for years were never drafted.

197. On information and belief, in order to gain a litigation
advantage, Defendants destroyed the file copies of the approved
Township Committee minutes listed in para. 193 above.

198. On information and belief, in order to gain a litigation
advantage, Defendants omitted information from their executive
session minutes that the Sunshine Act required them to include.

199. When Plaintiff submitted OPRA requests to the Municipal
Clerk in 2013, Defendant Greenbaum directed the Municipal Clerk
regarding which records to provide and which to withhold.

200. Meanwhile, by Order and Opinion filed April 12, 2013 (the
"April 12, 2013 Order"), Judge Coyle denied Plaintiff's motion
to amend her complaint in the 2010 Action, inter alia to clarify
the prerogative writs claims that Judge O'Connor held in the May
5, 2012 Order were in fact pleaded, and granted the Defendants'
cross-motion for summary judgment dismissing all claims,
including the claims for taking, inverse condemnation, and
declaration of the illegality of Section 11-297.

201. Judge Coyle refused to enlarge the time within which
Plaintiff could satisfy the pre-condition of bringing that
action in lieu of prerogative writs, thus forever foreclosing
all claims barred by the Rezem doctrine.

202. With regard to Plaintiff's claims regarding the illegality
of Section 11-297, Judge Coyle stated, contrary to Judge
O'Connor's repeated rulings: "Defendant seeks summary judgment
on counts One, Two, Three, Four and Eleven which all relate to
municipal land use law. Defendant argues that Plaintiff's
failure to file a timely prerogative writ action bars these
claims against municipal defendants. The Court finds that
Plaintiff's failure to challenge the Board's decision within the
45-day timeframe results in a waiver of these claims. Therefore,

Defendant's motion for summary judgment on counts One, Two,
Three, Four and Eleven is GRANTED."

203. At no time during the 2010 Action was there a finding
regarding the lawfulness or unlawfulness of Section 11-297.

204. With regard to Counts 8 and 9, Plaintiff's STATE taking and
inverse condemnation claims, disregarding the fact, repeatedly
recognized by Judge O'Connor, that the 2010 Action complaint did
NOT raise any federal claims whatsoever, Judge Coyle wrote only:
"The Court does not have to come to a conclusion regarding the
effect of the Ordinance on Plaintiff's property because both of
these claims are precluded by Plaintiff's failure to exhaust her
administrative remedies. Pursuant to Rezem, Plaintiff's claims
arising under the Fifth and Fourteenth Amendments are not ripe
unless Plaintiff files a timely prerogative writ action.
Therefore, Defendant's motion for summary judgment on counts
Eight and Nine is GRANTED."

205. At no time during the 2010 Action did any judge of the
trial court make any factual findings whatsoever regarding the
substance of Plaintiff's claims regarding the deprivation of her
property without compensation, including without limitation any
facts regarding whether Plaintiff's land was physically invaded,
whether imposing agricultural easements on half Plaintiff's land
to preserve open space and farmland for the benefit of the
public was a reasonably related, proportional condition to a
minor subdivision, or whether Plaintiff was deprived of
reasonable investment-backed expectations.

206. As held by the Appellate Division in Plaintiff's first
appeal of the 2010 Action, discussed more at para. 211 below,
because of his unfamiliarity with the 2010 Action, Judge Coyle
further mistakenly assumed that Judge O'Connor had previously
dismissed Plaintiff's fraudulent concealment claims, instead of

setting them for trial, and so mistakenly dismissed the 2010
Action in its entirety.

207. Plaintiff timely filed for reconsideration of the April 12,
2013 Order and Defendants opposed.

208. Inter alia, Plaintiff pointed out in her motion for
reconsideration that "Plaintiff did not make any claims under
federal law, including without limitation the "Fifth and
Fourteenth Amendment" to which the April 12, 2013 Order
mistakenly referred. "Plaintiff based her 'taking' claims on the
Constitution of the State of New Jersey only."

209. Plaintiff further pointed out in her motion: "The Current
Order erroneously states that 'all Counts of the Complaint have
been dismissed'. In fact, Judge O'Connor specifically excluded
the claim of 'fraudulent concealment' from her dismissal of
Count Twelve of the Complaint. Order dated August 31, 2011,
granting 'in part' Defendants' motion for partial summary
judgment on Counts 5, 6, 7, 10 and 12 in the Complaint. This
Court has not otherwise addressed this surviving claim, which
relates to facts extrinsic to the Planning Board proceedings and
is not by any stretch a 'civil rights' claim. Because
Plaintiff's claim for fraudulent concealment has not been
dismissed prior to or by the Current Order, it must go to
trial."

210. Judge Coyle denied Plaintiff's motion for reconsideration
and Plaintiff timely appealed.

211. In 2014, the Appellate Division dismissed the appeal of the
2010 Action as interlocutory and remanded precisely for
adjudication of the "fraudulent concealment" claim. The opinion
stated: "Although [Plaintiff] raises a number of substantive
arguments concerning these orders, we are unable to review the
matter on the merits at this juncture of the case. It is 'well
settled that a judgment, in order to be eligible for appeal as a

final judgment, must be final as to all parties and all
issues.'"

212. Meanwhile, between April 11, 2013 and April 18, 2013, Mr.
McGroarty billed Defendant Greenbaum for 15.25 hours work on the
proposed changes to Section 11-297 "per request of Township
Committee."

213. On April 9, April 12, April 13, April 15, April 16, April
18, and April 19, 2013, Defendant Greenbaum billed Knowlton for
contacts with Mr. McGroarty relating to his work regarding the
Section 11-297 revisions for a total of 7.3 hours work.

214. A letter to the Chairman of the Planning Board dated April
19, 2013, signed by Mr. McGroarty (hereinafter the "McGroarty
Letter," attached hereto as Exhibit C), was sent to the Planning
Board.

215. On information and belief, Defendant Greenbaum dictated or
edited both the form and content of this letter.

216. The McGroarty letter intentionally concealed the fact that
his work on ordinance changes had been commissioned by the
Township Committee at the April 8, 2013 Joint Meeting. Instead,
it falsely stated that "As a result of another matter concerning
Knowlton Township, I had the occasion to review the Township's
Land Development Ordinance and would like to offer my thoughts
regarding the cluster subdivision regulations for consideration
by the Planning Board and your professionals."

217. This false statement and the letter's intentional
concealment of the fact that Defendant Township Committee
commissioned Mr. McGroarty's work was in order to evade
Plaintiff's use of the letter to prove Defendants' knowledge
that Section 11-297 was unlawful.

218. The McGroarty letter then "suggested" deleting the key
ordinance provision Plaintiff had been challenging since 2007:

the "mandatory" application of Section 11-297 (aka "clustering")
to minor subdivisions like Plaintiff's.

219. But for these false statements and Defendants' concealment
of this letter from Plaintiff until she filed yet another OPRA
request in late 2013, Plaintiff could have used this letter in
her motion for reconsideration of Judge Coyle's April 12, 2013
Order.

220. Without any knowledge of any of Defendants' efforts to fix
the illegality of Section 11-297, on April 18, 2013, Plaintiff
filed an action in lieu of prerogative writs and for declaratory
judgment in New Jersey Superior Court (hereinafter the "2013
Action") complaining of the actions of the Planning Board, the
Township Committee, and their professionals in connection with
the 2013 Anderson Subdivision and the 2013 Paglia Subdivision.
The complaint challenged: the lawfulness of Section 11-297 on
its face and as applied to the 2013 Anderson and 2013 Paglia
Subdivisions; the lawfulness of those subdivision approvals;
Defendants' pattern of failure to keep minutes with the details
required by MLUL 40:55D-9.c; Defendants' particular failures
regarding the 2013 Anderson and 2013 Paglia subdivision minutes
and resolutions; and the cover-up of Defendants' pattern of
illegal actions in connection with its selective enforcement of
Section 11-297.

221. Because Defendants were keeping secret their intentions to
amend Section 11-297, Plaintiff included the following
allegations in her first complaint in the 2013 Action solely on
the basis of the 2013 Anderson Subdivision:

   a. Complaint para. 41: The Planning Board knows that some
      sections of the Ordinance are contrary to the MLUL.
   b. Complaint para. 42: The Township Committee knows that some
      sections of the Ordinance are contrary to the MLUL.

c. Complaint para. 43: Neither the Planning Board nor the Township Committee has taken action to revise the Ordinance to conform it to the requirements of the MLUL.

d. Complaint para. 44: The Township Committee supports the Planning Board in their failure to comply with the MLUL.

e. Complaint para. 45: The foregoing is part of a pattern of violating the provisions of the MLUL in order to minimize development in Knowlton Township and to shift the burden for preserving open space in Knowlton Township from the public to owners of large tracts."

f. Plaintiff also alleged in her first complaint in the 2013 Action that "the failure of the Planning Board to publish their findings and true reasons relating to approvals is because they know those findings and reasons are insufficient and/or improper under the MLUL."

222. On April 23, 2013, for the first time at a public meeting, the Planning Board discussed amending Section 11-297. On the same date, the Planning Board also held an executive session to discuss "the Casser litigation."

223. On May 5, 2013, Mr. McGroarty billed Defendant Greenbaum half an hour for a "Telephone call with Township planner re: Casser report and recommendation to Planning Board to modify minor subdivision provisions" of Section 11-297.

224. On May 20, 2013, Mr. McGroarty billed Defendant Greenbaum one quarter hour to "Respond via email to Township planning consultant re: proposed modification to minor subdivision provisions."

225. Mr. Layton of Maser Consulting, Defendant Planning Board's planner, sent a memo to the Planning Board dated May 20, 2018 stating that "As per discussion at the April 23, 2013 Planning Board meeting, attached is a draft of an ordinance to accomplish the objectives discussed at the meeting."

226. The attached draft stated that "The Primary Purpose of This Ordinance Is To Clarify Clustering Requirements" (emphasis added).

227. This statement was false. It was included in order to evade Plaintiff's use of the amendment of Section 11-297 to prove Defendants' knowledge that Section 11-297 was unlawful.

228. Among other major changes to Section 11-297, the "clustering" requirement at the heart of the 2010 Action, including without limitation the imposition of agricultural easements on half of each Mandated Preservation Tract as a "mandatory" condition of subdivision, was deleted for minor subdivisions such as Plaintiff's. (This change is hereinafter called the "Minor Subdivision Exemption.")

229. Had the Minor Subdivision Exemption been in effect at the time of Plaintiff's 2007 minor subdivision, Defendant Planning Board could not have conditioned approval of Plaintiff's 2007 subdivision on imposing agricultural easements on half her land without compensation.

230. Had the Minor Subdivision Exemption been in effect at the time of Plaintiff's 2007 minor subdivision, Defendant Planning Board would have had no basis to avoid approving Plaintiff's original application for three approximately 10-acre mini-farms and a 70-acre remainder, without imposition of agricultural easements on half the land, and Plaintiff would have been able to carry out her plan to sell agricultural easements on 69 acres to the SADC at the 2007 rate of approximately $10,000 per acre.

231. The Planning Board recommended, and the Township Committee enacted the Minor Subdivision Exemption.

232. Throughout the entire process, Defendant Greenbaum continued to oversee enactment of the Minor Subdivision Exemption. With the cooperation of the Planning Board attorney Mr. Hontz and the Township Committee attorney Mr. Cushing,

Defendant Greenbaum continued to urge the Planning Board and Township Committee to move more quickly and to continue to conceal the true reasons for enactment from Plaintiff and the court.

233. Throughout the entire process, Mr. McGroarty continued to bill Defendant Greenbaum for services in connection with the Minor Subdivision Exemption.

234. After its enactment on July 8, 2013, the Minor Subdivision Exemption also became a central issue in the 2013 Action Plaintiff filed on April 18, 2013.

235. With her conflict with Defendant Greenbaum resolved, Judge O'Connor was the first judge assigned to the 2013 Action.

236. As soon as Plaintiff appealed Judge Coyle's dismissal of the 2010 Action, defendants in the 2013 Action made motions to dismiss based on the defenses of lack of jurisdiction, res judicata, entire controversy, and failure to join indispensable parties.

237. Judge O'Connor granted the motion to dismiss without prejudice based on Plaintiff's failure to join the individual applicants for the 2013 Anderson Subdivision and 2013 Paglia Subdivision, but refused to dismiss on the basis of the other grounds. She required Plaintiff to amend her complaint to add Mssrs. Anderson and Paglia, and, at Plaintiff's request, permitted Plaintiff to amend her complaint to add a count challenging the newly enacted 2013 amendment to Section 11-297.

238. Plaintiff filed the First Amended Complaint in the 2013 Action on or about August 23, 2013, adding Mssrs. Anderson and Paglia as defendants and adding a count challenging the 2013 amendment to Section 11-297 on the basis of continued inconsistency with the MLUL.

239. The 2013 Action is ongoing.

240. Around the same time as Plaintiff filed the First Amended Complaint in the 2013 Action, Judge O'Connor was temporarily, and later permanently, assigned to the Appellate Division.

241. The 2013 Action was then re-assigned to a part-time judge recalled from retirement, Judge Pursel.

242. The 2013 Action Defendants renewed their motions to dismiss on the same grounds denied by Judge O'Connor.

243. By order dated November 6, 2013 ("November 6, 2013 Order"), Judge Pursel dismissed the 2013 Action based on a determination, contrary to Judge O'Connor's determination of the same issue, that "plaintiff's claims in the instant litigation are so similar to her claims in Casser I, claims which are now before the Appellate Division, that the Court does not have jurisdiction to hear the same."

244. Critical to Judge Pursel's determination was his finding that "[a]ll the relief that Plaintiff seeks turns on the legality of the Ordinance [Section 11-297]," which issue was "on appeal" in the 2010 Action.

245. But for Defendants' concealment of their research and knowledge that original Section 11-297 was illegal, Judge Pursel could not have made the adverse finding on which he based the November 6, 2013 Order.

246. Plaintiff timely moved for reconsideration, defendants opposed, and Judge Pursel denied reconsideration.

247. Plaintiff timely appealed the November 6, 2013 Order and the order denying its reconsideration.

248. In 2015, in the appeal of the 2013 Action, the Appellate Division reversed the November 6, 2013 Order and remanded the 2013 Action to the trial court, strongly suggesting that Plaintiff amend the First Amended Complaint.

249. Of necessity, the reversal and remand of the November 6, 2013 Order determined that the 2013 Action was <u>not</u> the same matter as the 2010 Action.

250. Meanwhile, in an opinion dated May 12, 2014, the Appellate Division reversed Judge Coyle's order dismissing the 2010 Action on the basis that Judge Coyle's purported dismissal of all claims was mistaken, because the claim of fraudulent concealment had never been decided. Declining to review Plaintiff's substantive challenges to Judge Coyle's other determinations because the appeal was interlocutory, the Appellate Division remanded the 2010 Action for determination of the issue of fraudulent concealment.

251. The remand was assigned to Judge Pursel.

252. In response to the remand, Judge Pursel held a case management conference on July 2, 2014.

253. Over Plaintiff's strenuous objections at that case management conference, by Order dated July 2, 2014, Judge Pursel ordered:

"1.  All counsel and pro se Plaintiff shall address the remanded issue of "Fraudulent Concealment" by way of motions and briefs filed no later than August 1, 2014. (quotes and emphasis in original) **No oppositions or replies will be accepted.** (emphasis added)

"2.  Oral argument will be scheduled upon receipt of the party's filings.

"3.  **No other motions will be entertained**; (emphasis added)

"4.  Pending a decision on the remand issue, the *status quo ante* shall be maintained"


254. On July 30, 2014 Defendant Greenbaum filed a certification and brief in support of "Defendants' Notice of Motion for Summary Judgement[sic]"

255. On August 1, 2014 Plaintiff filed a certification and brief in support of a "Motion to Amend the 2010 Complaint to Conform with the Proofs of Fraudulent Concealment and for Summary Judgment for the Claim of Fraudulent Concealment.

256. Judge Pursel did not even read Plaintiff's proposed First Amended Complaint.

257. Oral argument on all motions was held on September 11, 2014.

258. By letter to Judge Pursel dated September 12, 2014, Plaintiff again objected to his refusal to permit written oppositions to the parties' motions for summary judgment.

259. By Order dated September 25, 2014, Judge Pursel denied Plaintiff's motions to amend the complaint and for summary judgment, and granted Defendants' motion for summary judgment to dismiss Plaintiff's fraudulent concealment claims with prejudice.

260. The Order falsely stated that Defendants' motion for summary judgment was "unopposed"! Although, because Judge Pursel's July 2, 2014 Order <u>forbade</u> <u>written</u> opposition, it is true Plaintiff submitted no written opposition.

261. Plaintiff timely moved for reconsideration, defendants opposed, and Judge Pursel denied reconsideration.

262. Because Plaintiff's 2013 motion to amend her complaint in the 2010 Action was denied by Judge Coyle, and Plaintiff's 2014 motion to amend her complaint in the 2010 Action was denied by Judge Pursel, Plaintiff was NOT PERMITTED to plead facts occurring after March 5, 2010 in the 2010 Action.

263. Accordingly, Plaintiff had NO OPPORTUNITY in the 2010 Action to raise claims based on facts occurring after March 5, 2010.

264. On December 9, 2014, Plaintiff timely filed her second appeal of the 2010 Action.

265. After briefing, the Appellate Division then consolidated for consideration the first appeal of the 2013 Action, filed more than a year earlier on December 2, 2013, and the second appeal of the 2010 Action.

266. On July 7, 2015, the 2015 Appellate Opinion dismissed the claims in the 2010 Action on the basis of Rezem, holding that, because Plaintiff failed to file an action in lieu of prerogative writs within 45 days of the approval of her 2007 minor subdivision with the conditions she protested, her claims arising from that minor subdivision application were forever barred from New Jersey state courts.

267. The 2015 Appellate Opinion appeared to adopt the findings of the McGroarty Report, despite the trial court's denial to Plaintiff of the opportunity to challenge the basis and conclusions in that report, which opportunity to challenge Judge O'Connor said would be provided at trial if the report was introduced into evidence. The opinion appeared to conclude that the downzoning and deprivation of agricultural easements did not deprive Plaintiff of substantially all the value of her land, which the opinion appeared to adopt as the sole standard for taking under state law.

268. The 2015 Appellate Opinion remanded the 2013 Action, by that remand necessarily holding the claims pleaded in it to be different from those pled in the 2010 Action.

269. Plaintiff timely filed a petition for certification to the Supreme Court of New Jersey to reverse the Appellate Division's dismissal of the 2010 Action, which the Court denied by order dated January 15, 2016.

270. Because the 2015 Appellate Opinion rejected Plaintiff's attempts to enlarge the time to plead an action in lieu of prerogative writs to challenge the unlawful conditions imposed on her 2007 subdivision, this exhausted Plaintiff's State

remedies regarding compensation for the agricultural easements imposed on her land.

271. Accordingly, Plaintiff's federal cause of action for taking without compensation ripened on January 15, 2016.

272. Because the denial of certification ended the possibility of Plaintiff ever pursuing any of her state claims arising before March 5, 2010 in state court, Plaintiff's federal cause of action for denial of access to the state court ripened on January 15, 2016.

273. Meanwhile, in October 2015, Plaintiff wrote to the trial court in the 2013 Action to resume proceedings in that action, stayed since 2013. On November 10, 2015, Judge Pursel declined to resume proceedings until after the proceedings before the New Jersey Supreme Court in the 2010 Action were completed.

274. On April 8, 2016, Plaintiff again wrote to the trial court regarding resuming proceedings in the 2013 Action.

275. After a case management conference, Judge Pursel permitted Plaintiff to file a Second Amended Complaint in the 2013 Action ("2016 Second Amended Complaint").

276. On June 16, June 20, and July 5, 2016, Plaintiff filed OPRA requests with the Municipal Clerk to obtain documents relevant to drafting the 2016 Second Amended Complaint.

277. Defendants delayed providing, and failed and refused entirely to provide, many of the documents requested, including without limitation delaying providing any minutes of the April 8, 2013 Joint Executive Session between the Planning Board and the Township Committee, and refusing entirely to provide minutes of other 2013 Township Committee executive sessions.

278. In response to this, Plaintiff added claims to the 2016 Second Amended Complaint regarding Defendants' violations of OPRA and the Sunshine Act.

279. Township Defendants never answered any versions of the 2013 Action Complaint.

280. During litigation of the 2013 Action, Defendants continue to deny the illegality of Section 11-297, despite their knowledge that it is illegal.

281. To date, Defendants continue to obstruct Plaintiff's access to information relevant to the 2013 Action and this federal action by refusing and failing to create records that the MLUL and Sunshine Act require the Municipal Defendants to create and timely make available to the public, by refusing and failing to search storage media, and by providing false reasons to Plaintiff and the state court for denying timely access to public records.

**STATEMENT OF FIRST CLAIM: TAKING BY UNCONSTITUTIONAL CONDITIONS**

282. Plaintiff repeats and realleges the facts stated in paragraphs 1-281 above as if fully restated in this First Claim.

283. The Supreme Court cases of Dolan v. City of Tigard, 512 U.S. 374 (1994) ("Dolan"), Nollan v. California Coastal Comm'n, 483 U. S. 825 (1987) ("Nollan") and Koontz v. St. Johns River Water Mgt. Dist., 570 U.S. ___, ___, 133 S.Ct. 2586, 186 L.Ed.2d 697 (2013) ("Koontz") recognize the "unconstitutional conditions" doctrine of taking in the context of land development.

284. This doctrine "protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits," including applications for subdivision and site plans.

285. This doctrine permits taking of easements, including conservation easements like "open space" and agricultural preservation easements, only "so long as there is a 'nexus' and 'rough proportionality' between the property that the government demands and the social costs of the applicant's proposal. Dolan, supra, at 391, 114 S.Ct. 2309; Nollan, 483 U.S., at 837, 107 S.Ct. 3141." (Koontz, 133 S.Ct. at 2595)

286. As set forth in paras. 97-98 above, there was no "rough proportionality" between taking agricultural easements on half

Plaintiff's land the social costs, if any, of dividing one 100-
acre farm into three ten-acre farms and a 70-acre remainder
farm, especially with 69 acres to be preserved. The Township
Defendants did not even consider whether any social costs would
occur from the proposed minor subdivision.

287. Where there is no nexus and rough proportionality, the
taking is per se. ("we began our analysis in both *Nollan* and
*Dolan* by observing that if the government had directly seized
the easements it sought to obtain through the permitting
process, it would have committed a *per se* taking. See *Dolan,* 512
U.S., at 384, 114 S.Ct. 2309; *Nollan,* 483 U.S., at 831, 107
S.Ct. 3141." (Id. at 2598-2599) ("*per se* [takings] approach" is
the proper mode of analysis under the Court's precedent. *Brown
v. Legal Foundation of Wash.,* 538 U.S. 216, 235, 123 S.Ct. 1406,
155 L.Ed.2d 376 (2003)." (Id. at 2600)

288. Here, in the absence of Plaintiff's application for minor
subdivision, Township Defendants could not have taken
Plaintiff's agricultural easements without compensation. In the
absence of landowner agreement to sell such easements (outside
the PUD context), according to the New Jersey Supreme Court,
municipalities wishing "to create or encourage the preservation
of open space" only have the power to proceed and should proceed
under N.J.S.A. 40:55D-44, which requires "the payment of just
compensation to the owner of the affected parcel." New Jersey

<u>Shore Builders Association v. Township of Jackson</u>, 199 N.J. 449 (2009).

289. In the absence of subdivision applications, the Township routinely pays landowners or gets the State and County to pay landowners compensation for the imposition of agricultural easements on their land. See also paras. 12-14, 54 above.

290. Section 11-297 <u>never</u> required applicants for minor subdivision of tracts smaller than 50 acres to set aside any portion of their tracts as "open space."

291. The effect of minor subdivision of tracts of fifty acres or more is no greater than the effects of minor subdivision of tracts smaller than 50 acres.

292. On its face, to the extent it applies to minor subdivisions, Section 11-297 fails the test of constitutionality under <u>Dolan</u>, <u>Nollan</u> and <u>Koontz</u> quoted above.

293. Section 11-297 also fails that test as it was applied to Plaintiff's minor subdivision.

294. As more fully described in paras. 33-36 above, in 2007, Plaintiff applied for minor subdivision of her approximately 100-acre horse farm into three 10-acre mini-farms and a 70-acre remainder farm. Plaintiff requested a variance from the requirements of Section 11-297 so that she could sell agricultural easements on 69 acres of the 70-acre remainder to the SADC, at the going rate of approximately $10,000 per acre.

295. Plaintiff's plan put the existing house and two of the small existing barns on one ten-acre lot, and included a development plan to build one new house and a new barn on the 70-acre remainder. There was no development plan regarding the other two 10-acre parcels; they were to be sold without improvements.

296. Defendant Planning Board denied the Variance without reference to any adverse effects or impacts that Plaintiff's subdivision plan would create.

297. Despite Plaintiff's protests, as a condition of approving the minor subdivision, Defendants Planning Board and Township Committee applied Section 11-297 to impose agricultural easements on half her tract, without compensation, for the benefit of the public.

298. Despite Plaintiff's protests, as a further condition of that minor subdivision, Defendants Planning Board applied Section 11-297 to set a maximum limit of the number of lots that might be applied for in any future subdivision of the subdivided farms, regardless of any ordinance changes in the future permitting a greater number of lots.

299. Defendants never tried to justify application of these conditions to Plaintiff's minor subdivision on the basis of any adverse effects of her planned subdivision.

300. These conditions "lack[ed] an essential nexus and rough proportionality to the effects of the proposed new use of the specific property at issue, thereby diminishing without justification the value of the property." Koontz at 2600.

1.   These conditions sought to force Plaintiff "alone to bear public burdens [to preserve open space and agriculture in Knowlton Township] which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U. S. 40, 49 (1960).

301. These conditions accordingly constituted unconstitutional conditions and taking under Dolan, Nollan and Koontz.

302. As more fully discussed at paras. 11-14, 29-30, and 60 above, these conditions deprived Plaintiff of the opportunity to sell agricultural easements to the SADC at the going rate of approximately $10,000 per acre.

303. As described above at paras. 112-115 and in Exhibits One and Three hereto, Plaintiff filed the 2010 Action to pursue State remedies available to her to obtain compensation for this taking by imposition of conditions on her minor subdivision, and was denied compensation.

304. As reaffirmed in Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City, 473 US 172, 194-195 (1985) Plaintiff could not claim a violation of the federal Just

Compensation Clause until she had used the State procedure to obtain compensation and been denied just compensation.

305. It would have been futile to plead federal taking claims because they were not ripe.

306. The state court refused to consider Plaintiff's claims for compensation on the basis that she failed to file an action in lieu of prerogative writs within 45 days after approval of her minor subdivision subject to the Section 11-297 conditions.

307. For this reason also, it would have been futile to plead federal taking claims.

308. As more fully described above, including at paras. 113-115 and 269-272 above, when the New Jersey Supreme Court denied her petition for certification in the 2010 Action on January 15, 2016, Plaintiff's reserved federal claims for taking without just compensation ripened and accrued.

309. Plaintiff requests compensation for the agricultural easements that the Planning Board took for the Township in the amount of $10,000 per acre, plus interest from the date of the taking.

310. In the alternative, Plaintiff requests the cancelation of those agricultural easements, and damages in the amount of the difference between the value of those easements in 2007 and their value today.

311. Plaintiff also requests compensation of $200,000 for the rights to future subdivision taken, plus interest from the date of the taking; or, in the alternative, cancelation of this condition.

312. Plaintiff also requests whatever other relief this Court deems proper.

**STATEMENT OF SECOND CLAIM: PENN CENTRAL REGULATORY TAKING**

313. Plaintiff repeats and realleges the facts stated in paragraphs 1-312 above as if fully restated in this Second Claim.

314. The downzoning of the Farm, coupled with the application of Section 11-297 to Plaintiff's 2007 minor subdivision to restrict development to only half the tract, "unduly restricted the use of property." The downzoning and imposition of Section 11-297's open space easement on half Plaintiff's land "interfered with [her] distinct investment-backed expectations" to either subdivide into lots the same size as those surrounding her, or to sell her development rights to the SADC.

315. As set forth in more detail in paras. 8-9 above, Plaintiff purchased the 100-acre Farm for development as well as to live on part of it.

316. At the time Plaintiff invested in the Farm, it was zoned for one house per three acres, was surrounded by houses on either one acre or three acre lots, and there were no ordinances requiring preservation of half the tract as a condition of subdivision.

317. In 1991, the Township created the Farm Land Preservation Zone/District ("FPZ").

318. Because the Farm was <u>not</u> subject to the environmental constraints that the Township used to justify placing land in the FPZ, and because she was surrounded on two sides by land that was <u>not</u> placed in the FPZ, Plaintiff protested the Farm's inclusion in the FPZ.

319. In settlement of this protest, the Township agreed that it could not base any land use decisions affecting the Farm on general findings about environmental constraints in the FPZ that did not actually exist on Plaintiff's land.

320. Between 1991 and 2003, land in the FPZ was down-zoned first to one house per five acres and then to one house per ten acres, while Plaintiff's neighbors continued to reside on one-acre or three-acre lots.

321. Each time, Plaintiff protested the down-zoning.

322. In 2003, at the urging of the Township to consider preserving her land as a farm instead of developing it, Plaintiff allowed the Township to submit an application on her behalf to preserve 75 acres of the farm at the rate of $10,000 per acre. This fell through when the SADC made its formal offer of only $6500 per acre.

323. A couple of years later, when the Township again urged Plaintiff to preserve her land, representing that the SADC was now in fact offering between $9000-10,000 per acre, Plaintiff

agreed to preserve 69 acres, so long as she could first
subdivide off three 10-acre mini-farms.

324. Preparation of the application for the minor subdivision of
the three mini-farms required an out-of-pocket investment for
surveying, engineering and legal services costing in excess of
$50,000.

325. As described at paras. 14 and 36 above, Plaintiff formally
requested the Variance from the requirements of Section 11-297
so that she could sell agricultural easements on 69 acres of the
70-acre remainder to the SADC, at the going rate of
approximately $10,000 per acre.

326. Plaintiff's application specifically stated that she
planned to sell an agricultural easement on 69 acres of the 70-
acre remainder to the SADC or other preservation agency, thus
preserving them as agricultural open space.

327. To Plaintiff's shock, the Planning Board refused to
consider the Variance.

328. Plaintiff vigorously protested, but she was already
committed to the subdivision.

329. To conform with the Planning Board's interpretation of
Section 11-297 while preserving her plan subdivide off three
mini-farms required Plaintiff to expend more than $30,000 out-
of-pocket for additional engineering, surveying and legal
services, and to create a 25-acre lot for the existing marital

home, depriving Plaintiff of sole ownership of the 13 acres that
the Planning Board insisted upon adding to the size of the
marital home lot in Plaintiff's original subdivision plane.

330. Throughout the proceeding, Plaintiff protested these
changes and conditions.

331. The New Jersey remedy for contesting resolutions of the
Planning Board is by an action in lieu of prerogative writs made
within 45 days of publication of the resolutions.

332. As a result of her reasonable reliance on intentional
misrepresentations and fraudulent concealment of documents that
Defendants and their representatives made from April, 2007
through November, 2007, more specifically described in paras.
63-86 above, Plaintiff believed that it would be futile to
contest the denial of the Variance.

333. Plaintiff performed the Resolution conditions under protest
that they trespassed on her land, took from her an agricultural
easement with a market value of over $490,000, unfairly placed a
disproportionate burden on her to preserve open space for the
public benefit, and destroyed her reasonable, investment-backed
expectations for developing the Farm.

334. No compensation was provided Plaintiff for depriving her of
the value of her reasonable, investment-backed expectation to
subdivide her farm into three 10-acre mini-farms with a 70-acre

remainder, on which she would sell an agricultural easement of 69 acres at the 2007 market rate of $10,000/acre.

335. No compensation was provided Plaintiff for the Township's taking of her rights to future subdivision, denying her reasonable, investment-backed expectation to develop at least 10 additional lots in the future if she was unable to sell the agricultural easement.

336. The minor subdivision was perfected on February 13, 2009, by filing the deeds in the form required by the Planning Board attorney and Mr. Rodman, the Township engineer.

337. Prior to permitting filing of the deeds, Defendants required Plaintiff to expend funds to acquire a letter of credit securing the cost for surveying and installing the preservation markers.

338. By an additional expenditure out-of-pocket, installation of the preservation markers was completed on September 21, 2009, and the Township Engineer entered the property shortly thereafter to inspect the installation.

339. The statute of limitations in New Jersey for inverse condemnation is a minimum of six (6) years from the date the claim accrues, with enlargement permitted in the event officials fail to "turn square corners." Klumpp v. Borough of Avalon, 202 N.J. 390, 997 A.2d 967 (2010).

340. As set forth in detail at paras. 63-86 above, Township Defendants failed to "turn square corners" in connection with Plaintiff' 2007 subdivision application, instead misrepresenting and concealing documents to prevent Plaintiff from timely filing a legal challenge to the denial of the Variance.

341. But for Township Defendants' failure to turn square corners, Plaintiff would have timely filed an action in lieu of prerogative writs to challenge the denial of the Variance and the subsequent re-design of her minor subdivision plan.

342. When the New Jersey Supreme Court denied her petition for certification in the 2010 Action on January 15, 2016, Plaintiff's reserved federal claims for regulatory taking without just compensation ripened and accrued.

343. Plaintiff requests compensation in the amount of $820,000 for the regulatory taking plus interest from the date of the taking.

344. In the alternative, Plaintiff requests the return of her property plus damages in the amount of the monies she spent to comply with Section 11-297.

345. Plaintiff also requests any other relief which this Court deems just and proper.

## STATEMENT OF THIRD CLAIM: LORETTO PER SE TAKING

346. Plaintiff repeats realleges the facts stated in paragraphs 1-345 above as if fully restated in this Third Claim.

347. The Township Defendants committed such physical trespasses on Plaintiff's land by requiring her to install 16 permanent agricultural preservation markers and by reserving the right to enter and inspect them, and by the Township Engineer entering and inspecting them.

348. Plaintiff protested this physical invasion for which she was required to pay.

349. Installation was completed in October, 2009 and the Township Engineer inspected the sixteen permanent markers shortly thereafter.

350. The permanent markers interfere with cutting fields and pose a danger to horses and vehicles.

351. Plaintiff sought state compensation for this per se taking by all means available to her.

352. No compensation was provided Plaintiff for this per se taking.

353. When the New Jersey Supreme Court denied her petition for certification in the 2010 Action on January 15, 2016, Plaintiff's reserved federal claims for physical taking without just compensation ripened and accrued.

354. Plaintiff requests compensation in the amount of $15,000 for the physical taking plus interest from the date of the taking.

355. In the alternative, Plaintiff requests the removal of the permanent preservation markers plus damages in the amount $1500, plus interest, for her out-of-pocket costs to install them.

356. Plaintiff also requests any other relief which this Court deems just and proper.

**STATEMENT OF FOURTH CLAIM: DEPRIVATION OF PROPERTY UNDER COLOR
OF A VOID ORDINANCE**

357. Plaintiff repeats realleges the facts stated in paragraphs
1-356 above as if fully restated in this Fourth Claim.

358. As described at paras. 19-25 above, until August, 2013, the
MLUL prohibited clustering in minor subdivisions, while until
July, 2013, Section 11-297 mandated clustering in minor
subdivisions of Mandatory Preservation Tracts.

359. Accordingly, Section 11-297 is inconsistent with the MLUL
and so unlawful on its face and void ab initio.

360. Over Plaintiff's protests, the Planning Board applied this
unlawful and void ordinance to extort agricultural easements on
half the Farm without compensation.

361. Over Plaintiff's protests, the Planning Board also applied
this unlawful and void ordinance to force Plaintiff to redesign
her minor subdivision and install permanent preservation
markers, incurring additional out-of-pocket costs in excess of
$30,000.

362. This constituted state action depriving Plaintiff of
property without due process.

363. Plaintiff requests compensation in the amount of $820,000
for this deprivation of property without due process, plus
interest from the date of the deprivation.

364. In the alternative, Plaintiff requests the return of her property plus damages in the amount of the monies she spent to comply with the void ordinance.

365. Plaintiff also requests any other relief which this Court deems just and proper.

## STATEMENT OF FIFTH CLAIM: IN THE ALTERNATIVE: DEPRIVATION OF ORDINANCE CLAIMS and RIGHT OF ACCESS TO THE COURTS

366. Plaintiff repeats realleges the facts stated in paragraphs 1-365 above as if fully restated in this Fifth Claim.

367. In this Fifth Claim, Plaintiff targets the violations of statutes and official duties that Defendants committed to deprive Plaintiff of the opportunity to be heard on the merits in connection with her 2010 Action claims that Section 11-297 was illegal on its face and as applied to her 2007 Minor Subdivision ("Ordinance Claims").

368. This claim is pled solely in the alternative, in the event that this court denies relief under the First through Fourth Claims above for Defendants' constitutional torts in connection with Plaintiff's 2007 minor subdivision application.

369. The state courts based their refusal to hear the merits of Plaintiff's Ordinance Claims *first*, on Plaintiff's failure to file an action in lieu of prerogative writs within 45 days of Defendant Planning Board's 2007 approval of Plaintiff's minor subdivision subject to unlawful and unconstitutional conditions, and *second*, on the basis that the enactment of the July, 2013 amendment to Section 11-297 rendered Plaintiff's Ordinance Claims moot.

370. State causes of action are property. Actions of state actors which deprive persons of state causes of action are

actionable federal claims. <u>Logan v. Zimmerman Brush</u>, 455 U.S. 422 (1982).

371. Actions of state actors which deprive persons of access to state courts are federal claims actionable under the controlling case of <u>Christopher v. Harbury</u>, 536 U.S. 403 (2002).

372. To state a claim for denial of access, the plaintiff must identify: "1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." <u>Martin v. Unknown US Marshals</u>, 965 F. Supp 2d 502, 545 (DNJ 2013).

373. When the New Jersey Supreme Court denied her petition for certification in the 2010 Action on January 15, 2016, Plaintiff's claim for deprivation of the Ordinance Claims and denial of access to the state court accrued.

## A. Non-Frivolous, Underlying Claim That Ordinance Was Unlawful On Its Face and As Applied to Plaintiff's Minor Subdivision

374. In the 2010 Action, Plaintiff brought claims under state law for damages and for declaratory and injunctive relief relating to the application of an illegal ordinance to her 2007 subdivision ("Ordinance Claims"), as well as claims for taking and inverse condemnation under state law that occurred from 2007 through 2009 ("State Taking Claims"), and claims for deprivation

of equal protection, substantive due process and procedural due

process guaranteed by the New Jersey Civil Rights Act and New

Jersey Constitution ("State Civil Rights Claims").

375. Plaintiff's key Ordinance Claims in the 2010 Action were

that Section 11-297's requirement that applicants for minor

subdivisions deed restrict half their land as "open space" for

the benefit of the public, without compensation, was unlawful

both on its face, and as applied to Plaintiff's 2007 Minor

Subdivision. These Ordinance claims were non-frivolous.

376. Aside from constitutional issues of Section 11-297's

requiring Plaintiff "alone to bear public burdens [to preserve

open space and agriculture in Knowlton Township] which, in all

fairness and justice, should be borne by the public as a whole":

1. Until August, 2013, the MLUL prohibited minor subdivisions

   from including residential cluster (MLUL 40:55D-5 and 6),

   while until July, 2013, the Ordinance required minor

   subdivisions of tracts of 50 acres or more to include

   residential cluster (Ordinance sec. 11-61-62, 11-297); and


2. Municipalities lack the authority to require applicants for

   subdivision (other than for "planned development") to

   provide open space as a condition of approval, e.g., Shore

   Builders v. Township of Jackson, 199 N.J. 449 (2009)

   (hereinafter "Shore Builders"), while, until July, 2013,

Section 11-297 purported to require applicants for minor
subdivision of tracts of 50 acres or more permanently to
deed restrict at least half their tracts as open space.

377. Under the New Jersey Declaratory Judgments Act, N.J.S.A.
2A:16-52 et seq., a person "whose rights are affected by… a
municipal ordinance" may request (i) a declaration of the
validity of that ordinance and (ii) damages for violation of the
rights that ordinance affects. This is precisely what Plaintiff
did in the 2010 Action.

378. That Plaintiff's Ordinance Claims were non-frivolous is
proven by the facts that (a) they survived two motions for
summary judgment before Judge O'Connor (see the August 31, 2011
Order attached hereto as Exhibit Two and the May 25 2012 Order
attached hereto as Exhibit Three); (b) they were scheduled for
trial; and (c) and Judge O'Connor required multiple rounds of
briefing and hearings on Plaintiff's motion in limine to declare
the ordinance illegal on its face.

**B. The Official Acts Frustrating The Litigation**

379. In 2007, in violation of the duty of candor and the duty to
turn square corners, Township Defendants made the
misrepresentations to Plaintiff listed in paras. 63-86 above,
including without limitation the misrepresentation by the
Planning Board attorney that Section 11-297 had been held
lawful, and the misrepresentation by the Planning Board attorney

and various members of the Planning Board that it had imposed the same Section 11-297 conditions on all prior subdivisions that it was imposing on Plaintiff's, and none of these prior applicants had ever challenged the conditions.

380. These misrepresentations were made to persuade Plaintiff, and did persuade Plaintiff in 2007, that it would be futile to sue to challenge Section 11-297.

381. In order to cover up these misrepresentations and deter Plaintiff from challenging Section 11-297 and its application to her minor subdivision, in violation of the duty of candor, the duty to turn square corners, and the OPRA statute, Defendants concealed documents Plaintiff requested in 2007 during hearings and via OPRA requests, which documents would have proven the misrepresentations false.

382. Plaintiff believed and relied on the misrepresentations, which, in connection with the absence of documents proving them false, caused her to accept the illegal conditions of approval and to not timely file an action in lieu of prerogative writs to contest the Planning Board's denial of her request for variance from the requirement to permanently deed restrict half her land without compensation.

383. It was not until Plaintiff discovered the 2009 New Jersey Supreme Court decision in Shore Builders that Plaintiff began to question the Township Defendants' misrepresentations.

384. But it was not until Plaintiff submitted another OPRA request in early 2010, which the Municipal Clerk responded to by providing Plaintiff access to the room containing files of prior subdivision applicants, that Plaintiff realized the extent of Defendants' misrepresentations and cover-up.

385. Plaintiff then promptly filed the 2010 Action.

386. Judge O'Connor did not find Plaintiff's failure to file an action in lieu of prerogative writs in 2007 to be a bar to Plaintiff's Ordinance and Taking Claims, scheduled them for trial, and, in February, 2013, was on the verge of deciding the issue of the facial legality of Section 11-297.

387. It was at this point that Defendant Greenbaum created a conflict with Judge O'Connor and she recused herself.

388. At the same time, Defendant Greenbaum engaged Mr. McGroarty to persuade Defendants Township Committee and Planning Board to amend Section 11-297 to cure the worst of its deviations from the MLUL.

389. Defendant Greenbaum engaged Mr. McGroarty in or before February, 2013, to persuade Defendants Planning Board and Township Committee to amend Section 11-297 to bring it into compliance with the MLUL in such a way as to gain a litigation advantage in the 2010 Action. This violated the doctrine of square corners with which attorneys litigating for New Jersey public entities must comply.

390. In addition, in violation of the MLUL, Sunshine Act and criminal law, Defendants falsified minutes and resolutions relating to both the 2013 Anderson Subdivision and the amendment of Section 11-297 in order to conceal their knowledge that Section 11-297 was inconsistent with the MLUL and hence illegal and void.

391. In addition, in violation of their duty of candor, Defendants Planning Board and Township Committee refused to answer questions in public meetings regarding the reasons for their failure to apply Section 11-297 to the 2013 Anderson Subdivision.

392. In addition, in violation of their duties under the Sunshine Act and OPRA, the Township Defendants omitted information from their minutes, especially their "closed/executive" meeting minutes, required under the Sunshine Act, and either failed entirely to create, or refused to disclose the existence of these minutes when Plaintiff requested minutes under OPRA in 2013 and 2016.

393. In addition, in violation of the state court rules and the duty to turn square corners, Defendants continued to misrepresent to the court that they believed application of Section 11-297 to Plaintiff's minor subdivision was lawful, even after they spent thousands of dollars to amend it to conform it

to the MLUL in a manner that would provide Defendants a litigation advantage in the 2010 Action.

394. Defendants' violation of their ministerial duties under the MLUL and Sunshine Act regarding creation and disclosure of minutes and articulation of the true reasons for official actions, relating to the approval of the 2013 Anderson Subdivision and the amendment of Section 11-297, as well as the breach of their duties of candor to the state court and to amend discovery responses, were successful in barring any determination on the merits of Plaintiff's Ordinance Claims.

   a. Disregarding Judge O'Connor's two orders denying two prior attempts by defendants to dismiss the Ordinance Claims on the basis of Plaintiff's failure to file an action in lieu of prerogative writs in 2007, in April, 2013, Judge Coyle held that Plaintiff's failure to file an action in lieu of prerogative writs in 2007 did bar the Ordinance Claims.

   b. The 2015 Appellate Opinion held the Ordinance Claims moot in the 2010 Action on the basis of the July, 2013 amendment of Section 11-297.

395. Accordingly, by the means of the official misconduct described above, Defendants deprived Plaintiff her federal "constitutional right to effectively use the courts."

## c. Remedy That May Be Awarded As Recompense But That Is Not Otherwise Available In A Future Suit

396. In the event this Court denies Plaintiff relief under the First through Fourth Claims above, Plaintiff will have no remedy other than a claim for denial of access to the courts for the taking of her real property under color of an illegal ordinance.

397. There is no remedy available in a future state suit for the loss of her claims, because she has been denied expansion of time to file an act in lieu of prerogative writs to challenge application of Section 11-297 to her minor subdivision.

398. This court may provide Plaintiff the remedies of compensation for the property taken, and/or return of the property taken and damages.

399. Plaintiff requests compensation in the amount of $820,000, which is what she could have received as damages under the New Jersey Declaratory Judgments Act for the damages caused by the unlawful application to her subdivision of Section 11-297.

400. Plaintiff also requests any other relief which this Court deems just and proper.

**STATEMENT OF SIXTH CLAIM: DEPRIVATION OF STATE CIVIL RIGHTS and TAKING CLAIMS and DENIAL OF RIGHT OF ACCESS TO THE COURTS**

401. Plaintiff repeats realleges the facts stated in paragraphs 1-400 above as if fully restated in this Sixth Claim.

402. This Sixth Claim is pled solely in the alternative, in the event that this court denies relief under the First through Fourth Claims above.

403. This Sixth Claim targets the violations of statutes and official duties that Defendants committed to deprive Plaintiff of the opportunity to be heard on the merits in connection with the state law claims she filed in state court in the 2010 Action for taking, inverse condemnation, equal protection, substantive due process, and procedural due process (collectively, "State Taking and Civil Rights Claims").

404. The state courts refused to entertain the State Taking and Civil Rights Claims based on Plaintiff's failure to file an action in lieu of prerogative writs within 45 days of Defendant Planning Board's 2007 approval of Plaintiff's minor subdivision subject to unlawful and unconstitutional conditions.

405. As set forth in paras. 63-86 above, the Township Defendants' misrepresentations and fraudulent concealment of documents during the 2007 Subdivision Application caused Plaintiff's failure to file.

406. State causes of action are property. Actions of state actors which deprive persons of state causes of action are actionable federal claims. Logan v. Zimmerman Brush, 455 U.S. 422 (1982).

407. Actions of state actors which deprive persons of access to state courts are federal claims actionable under the controlling case of Christopher v. Harbury, 536 U.S. 403 (2002).

408. To state a claim for denial of access, the plaintiff must identify: "1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Martin v. Unknown US Marshals, 965 F. Supp 2d 502, 545 (DNJ 2013).

**A. Non-Frivolous, Underlying Claims**

409. The State Taking and Civil Rights claims were not frivolous.

410. That the taking claims were not frivolous is shown by the fact that Judge O'Connor twice denied the municipal defendants' motions for summary judgment regarding them and scheduled them for trial. See the August 31, 2011 and May 25, 2012 Orders attached hereto as Exhibits Two and Three, respectively.

411. That the state civil rights claims under the New Jersey Civil Rights Act ("NJCRA") and the New Jersey Constitution were not frivolous is shown as follows:

a. They were never held frivolous; they were only held
   unripe.

b. Plaintiff's claim that the 2010 Action defendants deprived
   Plaintiff of substantive due process was based on the same
   facts as her taking claims. Because state law
   distinguishes between inverse condemnation based on a
   lawful ordinance and inverse condemnation based on an
   unlawful ordinance, Plaintiff pleaded state substantive
   due process claims in the alternative to her taking
   claims, in case the Ordinance was held unlawful.

c. In addition, Plaintiff pleaded facts in the 2010 Complaint
   to show that the Planning Board's refusal to grant
   Plaintiff's minor subdivision application request for a
   variance from the Section 11-297 requirements was
   unreasonable, arbitrary and capricious, especially since
   *more land would have been preserved* under Plaintiff's plan
   with the Variance, than was preserved by denial of the
   Variance. Based on these facts, Plaintiff pleaded a second
   non-frivolous claim for denial of substantive due process.

d. With regard to Plaintiff's claims for denial of equal
   protection under state law: In the 2010 Action complaint,
   Plaintiff pleaded facts to show, inter alia, that
   Defendant Planning Board provided relief from the Section
   11-297 "mandatory" open space preservation easements and

management plans to all prior Mandatory Preservation Tract subdivisions other than Plaintiff's and one other. Based on this disparate treatment of similarly situated applicants, Plaintiff pleaded non-frivolous claims for denial of equal protection under NJCRA and the New Jersey Constitution.

e. Similarly, in the 2010 Action complaint, Plaintiff pleaded facts to show that she was deprived of property in the form of agricultural easements through the illegal process of a condition on minor subdivision, rather than through the proper state statutory procedures which required hearings on value and compensation. Based on this, Plaintiff pleaded non-frivolous claims for denial of procedural due process under the NJCRA and New Jersey Constitution.

## B. The Official Acts Frustrating the Litigation of the State Equal Protection Claims

412. Township Defendants were acting in their official capacities at all relevant times, so their acts were official.

413. The official acts of Township Defendants frustrating the litigation of Plaintiff's Civil Rights Claims are the acts in 2007 set forth in paras. 63-86 above. They include without limitation intentional misrepresentations and concealment of

records Plaintiff requested both during subdivision hearings and by OPRA requests in 2007.

414. These intentional misrepresentations and concealment of documents in 2007 were intended by Township Defendants to cause, and did cause, Plaintiff to believe that the Section 11-297 deed restrictions and management plans had been imposed on all prior applicants, and that it would be futile to challenge Defendant Planning Board's denial of the variance Plaintiff requested from those Section 11-297 conditions.

415. These intentional misrepresentations and fraudulent concealment of documents were intended to prevent and did prevent Plaintiff from filing an action in lieu of prerogative writs in 2007.

416. Other than asking the Township Defendants for information regarding prior applications, which is precisely what Plaintiff did, Plaintiff had no other reasonable means of obtaining the information showing that Defendant Planning Board in fact treated Plaintiff differently from similarly situated applicants.

417. Had Plaintiff known Defendant Planning Board had provided prior applicants the very relief from Section 11-297 that they denied her, she would immediately have filed an action to challenge denial of that relief.

418. Plaintiff did not discover that Township Defendants' misrepresentations were false until February, 2010, when, in response to a new OPRA request, she was provided access to a vault containing the files of prior subdivision applications.

419. Upon discovering that Township Defendants had in fact granted the very relief from Section 11-287 to other applicants that was denied her, Plaintiff immediately filed the 2010 Action in state court.

420. This proves that it was only the Township Defendants' official misconduct in 2007 that caused the delay in Plaintiff's filing of her action to challenge the application of Section 11-297 to her, which delay barred the state courthouse door to her claims.

421. In addition, Defendants' misconduct in 2010 and 2013 and independent causes of the blocking of Plaintiff's state taking claims from being heard on the merits.

422. Starting in 2010, the Township Defendants hired special assistants to the Municipal Clerk and Planning Board Secretary to "reorganize" the document storage vaults and shred thousands of pages of documents.

423. On information and belief, many of the destroyed documents were relevant to the 2010 Action.

424. In addition, Defendant Greenbaum aided the Township Defendants to destroy relevant documents by delaying for over a

year his response to Plaintiff's first and only Request to
Produce documents, refusing to respond until two days before the
end of the scheduled discovery period, and after he provided
Plaintiff the McGroarty Report.

425. After providing Plaintiff the McGroarty Report less than a
month before the end of discovery, Defendants violated their
duty under the doctrine of square corners by blocking
Plaintiff's discovery regarding the McGroarty Report, the
deposition of Mr. McGroarty, and the extension of the discovery
period.

426. Despite the McGroarty Report, in her May 25, 2012 Order,
Exhibit B hereto, Judge O'Connor again denied Defendants' motion
for summary judgment on the Taking Claims and the Ordinance
Claims and scheduled them for trial.

427. In 2013, Defendant Greenbaum caused Judge O'Connor to
recuse herself on the eve of her decision of Plaintiff's thrice
briefed and twice-argued critical motion in limine to declare
the ordinance illegal on its face.

428. But for Defendant Greenbaum causing Judge O'Connor's
recusal, Plaintiff's taking claims would have gone to trial.

429. Thereafter, Defendant Greenbaum used the McGroarty Report
to poison the well in all his briefs filed after he caused Judge
O'Connor to recuse herself. Inter alia, the McGroarty Report
falsely distinguished Plaintiff's minor subdivision from all

prior subdivisions, opining that the others were properly
exempted from "mandatory" Section 11-297 even though they didn't
request variances, and that Plaintiff was not harmed by being
required to give the Township agricultural easements on half her
land for no compensation, rather than getting $10,000 an acre
for the easements from the SADC.

430. Ignoring Judge O'Connor's two orders and opinions to the
contrary, Judge Coyle dismissed the Ordinance Claims and Taking
Claims on the basis that Plaintiff failed to file an action in
lieu of prerogative writs within 45 days of approval of the 2007
minor subdivision.

431. This effectively reduced the statutory time for filing
state taking claims from <u>six years</u> from the date of accrual, to
<u>45 days</u> from the date of approval of a subdivision.

432. Despite the fact that Plaintiff never had the opportunity
for discovery regarding the McGroarty report, nor the
opportunity to cross-examine Mr. McGroarty, and despite the fact
that no judge in the trial court ever made any findings of fact
regarding Plaintiff's disputes regarding the bases and
conclusions in the McGroarty Report, Defendant Greenbaum caused
the 2015 Appellate Division Opinion to rely upon those disputed
facts.

## C. Remedy That May Be Awarded As Recompense But That Is Not Otherwise Available In A Future Suit

433. There is no remedy available in a future state suit for the loss of her claims, because she has been denied expansion of time to file an act in lieu of prerogative writs, which the state court held was a prerequisite to pursuit of any claim in state court arising from her subdivision.

434. To the extent this court denies Plaintiff the remedies she requests in the First through Fourth Claims above, then Plaintiff has no other remedy than this denial of access claim for the damages caused her by Defendant Planning Board's application of Section 11-297 to her minor subdivision, and their breaches of the MLUL, OPRA, and the duties of candor and turning square corners.

435. Accordingly, Plaintiff here requests the damages she would have recovered in state court had her state claims been heard on the merits.

436. In the alternative, Plaintiff here requests the cancellation of the agricultural easements on her land, the removal of the sixteen preservation markers, and damages in the amount of the difference in value between the market rate in Knowlton for agricultural easements in 2007 and the market rate today, plus interest.

437. Plaintiff also requests any other relief this Court may

deem proper.

**STATEMENT OF SEVENTH CLAIM: SPOLIATION/FRAUDULENT CONCEALMENT**

438. Plaintiff repeats and realleges the facts stated in paragraphs 1-437 above as if fully restated in this Seventh Claim.

439. Plaintiff here targets the violations of statutes and official duties that Defendants committed (a) to persuade Plaintiff to accept the Planning Board denial of the Variance and (b) to obtain the judgment in the 2010 Action. See Williams v. BASF Catalysts LLC, 765 F. 3d 306 (3rd Cir. 2014).

440. To prove the tort of spoliation/fraudulent concealment, a plaintiff must establish five elements:

(1) The defendant had a legal obligation to disclose evidence in connection with an existing or pending litigation;
(2) the evidence was material to the litigation;
(3) the plaintiff could not reasonably have obtained access to the evidence from another source;
(4) the defendant intentionally withheld, altered, or destroyed the evidence with purpose to disrupt the litigation; and
(5) the plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.

Id. at 320-321.

**LEGAL OBLIGATION**

441. Township Defendants have statutory, non-discretionary obligations timely to create and timely to make available to the public, resolutions and minutes of meetings, both open and "closed," that reflect the actual findings and actual reasons for the actions of the Planning Board and Township Committee,

including without limitation under MLUL 40:55D-9.c., 40:55D.10
and the Sunshine Act.

442. Township Defendants have the obligation under OPRA to
respond in good faith to requests for public records.

443. Township Defendants, and Defendant Greenbaum when acting as
a representative of the Township Defendants, also have the New
Jersey common law duty to "turn square corners" when responding
to information requests by the public.

444. The Township Defendants, and Defendant Greenbaum when
acting as a representative of the Township Defendants, also have
the New Jersey common law duty of candor when responding to
information requests by the public.

445. All Defendants have the duty to preserve documents relevant
to anticipated or ongoing litigation.

446. All Defendants have the duty of candor to the court.

447. All Defendants have the duty of responding in good faith to
discovery requests.

448. All Defendants have the duty to correct and supplement
their discovery responses, including admissions, in the 2010
Action.

**EVIDENCE MATERIAL TO THE LITIGATION**

449. Township Defendants concealed evidence of subdivision
applications similarly situated to Plaintiff's 2007 Minor
Subdivision, showing that the Planning Board provided them the
very relief Plaintiff requested in her application for variance
from Section 11-297 (the "2007 Evidence"). The 2007 Evidence was
material to Plaintiff's argument that Defendant Planning Board
had the power to grant her Variance and that Section 11-297 was
illegal.

450. New Jersey applications for subdivision are quasi-judicial
procedures and so "litigation" for purposes of spoliation.
Defendants have claimed litigation-related privileges in

connection with Plaintiff's 2007 application for subdivision.
Accordingly, they are estopped from now claiming that the 2007
application was not a litigation context for purposes of
spoliation/fraudulent concealment claims.

451. Township Defendants concealed the 2007 Evidence with the
intent and effect of persuading Plaintiff that challenging
Section 11-297 and denial of the Variance would be futile. But
for concealment of the 2007 Evidence, Plaintiff would
immediately have brought an action to challenge denial of the
Variance (assuming that the Planning Board would have continued
to deny it in the face of their own minutes and resolutions
showing that they routinely granted the very relief from Section
11-297 that the Variance requested). Win or lose, this would
have satisfied the Rezem doctrine, and the state court would not
have barred Plaintiff's 2010 Action claims from consideration on
their merits.

452. The 2007 Evidence was also material to Plaintiff's
Ordinance Claims in the 2010 Action, as well as her claims
regarding equal protection and substantive due process.

453. Beginning no later than the summer of 2010, after Plaintiff
filed the 2010 Action, the Township Defendants "reorganized" the
Planning Board and Township Committee vaults and archives and
shredded thousands of pages of documents. On information and
belief, these shredded documents were material to Plaintiff's
2010 Action.

454. Defendant Greenbaum provided time for this destruction by
delaying his response to Plaintiff's 2010 Action Request to
Produce.

455. Defendants never produced the documents responsive to
Plaintiff's Request to Produce in the 2010 Action.

456. On information and belief, the documents in Plaintiff's
Request to Produce were material to the 2010 Action.

457. Plaintiff did not discover until 2016, when she made yet another OPRA request, that the Planning Board and Township Committee kept minutes of "executive" aka "closed" meetings somewhere other than the document vault to which the Municipal Clerk gave her access in 2010. To this day, Plaintiff has not been provided access to relevant "executive" meeting minutes. In 2016, the Municipal Clerk informed Plaintiff that if the Planning Board or Township Committee violated their non-discretionary statutory duties under the OPMA and MLUL to create, or to formalize or approve minutes created, or to preserve copies of minutes, then they "did not exist" and she was not required to provide them in response to an OPRA request.

458. In 2013, with regard to the approval of the 2013 Anderson Subdivision and the 2013 Paglia Subdivision and the amendment of Section 11-297, as detailed at paras. above, in violation of their statutory duties under the MLUL and Sunshine Act, Defendants conspired to create, and did create minutes and resolutions of both the Planning Board and Township Committee that omitted information material to the central issue in the 2010 Action of the legality of Section 11-297.

459. In 2013, as detailed at paras. 158-168, 170-174, 178-183, 186-198, 212-219, 222-228, 232-233, and 244-245 above, in violation of their statutory duties under the MLUL and Sunshine Act and criminal statutes, Defendants falsified and/or aided in falsifying minutes and resolutions of both the Planning Board and Township Committee that were material to the central issue in the 2010 Action, then pending before first Judge O'Connor and then Judge Coyle, of the legality of Section 11-297.

460. In 2013, Defendant Greenbaum masterminded the falsification of Mr. McGroarty's April, 2013 letter to the Chairman of the Planning Board, in order to conceal the illegality of Section

11-297, critical to the Ordinance Claims then pending in the
2010 Action.

**PLAINTIFF COULD NOT REASONABLY HAVE OBTAINED ACCESS TO THE
EVIDENCE FROM ANOTHER SOURCE**

461. The minutes and resolutions were created, maintained, and
stored by Defendants. Accordingly, they were not available from
another source.

462. The applications for subdivision of other Mandatory
Preservation Tracts were maintained and stored by Defendants,
and not reasonably available from the applicants, even if
Defendants had not concealed the identities of those applicants
when Plaintiff requested their identities both during the 2007
minor subdivision proceedings and by her two 2007 OPRA requests.

463. The destroyed documents were not available from another
source because only Defendants could identify them once they
were destroyed.

**DEFENDANTS INTENTIONALLY WITHHELD, ALTERED, OR DESTROYED THE
EVIDENCE WITH PURPOSE TO DISRUPT THE LITIGATION**

464. Township Defendants intentionally withheld the 2007
Evidence in 2007 during the quasi-judicial application for
variance before the Planning Board in order (a) to persuade
Plaintiff to accept denial of Variance and provide the Township
agricultural easements on half the Farm without compensation;
and (b) to dissuade her from timely challenging (i) the illegal

conditions of her subdivision approval and (ii) the facial illegality of Section 11-297.

465. On information and belief, Township Defendants destroyed documents during their "reorganization" of the vaults in 2010 with the purpose to disrupt the 2010 Action.

466. Defendants withheld the documents responsive to Plaintiff's Request to Produce in the 2010 Action with the purpose to disrupt the 2010 Action.

467. Defendants failed to correct and supplement their discovery responses, including admissions, in the 2010 Action, with the purpose to conceal the facial illegality of Section 11-297 and disrupt the 2010 Action.

468. Defendants falsified documents in 2013 and withheld evidence from Plaintiff and the 2010 Action court in 2013 and thereafter with the purpose to conceal the facial illegality of Section 11-297 and disrupt the 2010 Action.

469. In addition to refusing to produce documents responsive to Plaintiff's Request to Produce in the 2010 Action, Defendants intentionally withheld corrections to answers, admissions and interrogatories in the 2010 action, falsely repeated in court filings that they believed the Cluster Ordinance was lawful as applied to minor subdivisions, and falsified meeting minutes, resolutions and memoranda relating to the 2013 Anderson Subdivision and the drafting and passage of the 2013 amendment to Section 11-297, and the formulation, proposal, and tabling of additional amendments to Section 11-297 during 2013 and 2014, all with the purpose and effect of disrupting the 2010 action and perpetrating a fraud on the State Court.

**PLAINTIFF WAS DAMAGED IN THE UNDERLYING ACTION BY HAVING TO RELY ON AN EVIDENTIAL RECORD THAT DID NOT CONTAIN THE EVIDENCE DEFENDANT CONCEALED**

470. To establish damage, Plaintiff is <u>not</u> required to
demonstrate that she "would have prevailed in the underlying
action," but only that Defendants' spoliation of evidence
"harmed [her] case."

471. It is sufficient to allege that Plaintiff's efforts to
obtain the Variance in 2007, as well as her efforts to pursue
her claims in the 2010 Action, were "impaired" by not having the
evidence Defendants withheld, falsified, and/or destroyed.

472. Plaintiff was damaged in the 2007 subdivision variance
proceeding by having to rely on an evidential record that did
not contain the 2007 Evidence. Had Plaintiff been able to
present these documents to the Planning Board as proof that they
had provided the very relief Plaintiff requested to all
similarly situated applicants, they likely would have granted
the Variance.

473. Defendants' misconduct denied Plaintiff an effective remedy
in the 2010 action by requiring her to rely on an evidential
record that did not contain admissions of Defendants regarding
the central substantive issue of whether the Cluster Ordinance
was lawful.

474. Plaintiff was damaged in the 2010 Action by Township
Defendants' withholding of the 2007 Evidence by her consequent
failure, intended by the Township Defendants, to file an action

in lieu of prerogative writs to challenge denial of the variance
and the facial illegality of Section 11-297. Had the Planning
Board still denied the variance in the face of the evidence of
prior non-enforcement of Section 11-297 which Municipal
Defendants concealed from Plaintiff, then Plaintiff promptly
would have filed an action contesting denial of her request for
variance and challenging Section 11-297 on its face and as
applied. The Rezem doctrine then would not have barred
Plaintiff's claims in the 2010 Action from being heard on the
merits in state court.

475. In addition to denying Plaintiff procedural due process
during the Planning Board's subdivision application process, and
denying Plaintiff access to State court for her 2010 Action
claims, this intentional misrepresentation and fraudulent
concealment by municipal officials and their attorneys, possible
only because of their official positions, caused Plaintiff to
incur tens of thousands of dollars out-of-pocket to redesign her
minor subdivision, comply with the Section 11-297 requirements
as the Planning Board specially interpreted them for Plaintiff's
subdivision alone, and to litigate the fruitless 2010 Action.
Defendants' intentional misrepresentations and concealment and
destruction and falsification of documents, as well as their
fraud upon the state court, deprived Plaintiff of both her real
property and her state causes of action.

476. In addition to constituting spoliation/fraudulent concealment, this official misconduct also denied Plaintiff compensation for the taking of her real property and deprived her of access to the state courts, in violation of the United States Constitution and 42 U.S.C. 1983 and 1985.

477. Except to the extent duplicative of damages received under other Claims in this Complaint, Plaintiff requests (a) costs she incurred in the 2010 Action because of Defendants' misconduct and fraud described above, (b) the damages she would have recovered in the 2010 Action for application of an unlawful ordinance to her 2007 minor subdivision, had Defendants admitted by January, 2013 in the 2010 Action that Section 11-297 was unlawful on its face, and (c) punitive damages.

478. Plaintiff also requests such other relief as this Court deems proper.

## STATEMENT OF EIGHTH CLAIM: UNJUST ENRICHMENT

479. Plaintiff repeats and realleges numbered paragraphs 1-478 above.

480. To this day, the public in general and the residents of Knowlton Township in particular are unjustly enriched by their enjoyment of the agricultural easement improperly imposed on the Farm without compensation, and Plaintiff suffers from the presence of 16 permanent preservation markers on the Farm, a management plan limiting her permissible agricultural practices, and deed restrictions limiting her future use and subdivision of her land.

481. Under the Rezem Doctrine, no remedy is available to Plaintiff in state court.

482. As a matter of equity, Plaintiff requests this Court to order the return of the agricultural easements taken from her, the removal of the preservation markers, and the cancellation of the deed restrictions limiting her future use and subdivision of the Farm.

Order Filed 08/31/2011

Exhibit Two

LAW OFFICE OF ROBERT J. GREENBAUM
1500 Route 517, Suite 214
Hackettstown, New Jersey 07840
(908) 684-4004
Attorneys for Defendants
Township of Knowlton, Mayor and Committee for
Knowlton, individually and in their official
capacities, Township of Knowlton Planning
Board, Members of the Township of Knowlton
Planning Board, individually and in their official
capacities, Rene Mathez, David A. Smith, Ronald C.
Farber, Frank Van Horn, George James, Clayton Taylor,
Michael Tironi, Dale Glynn, Hal Bromm, Howard Cowell



FILED

Amy O'Connor J.S.C.
Judges Chambers

AUG 3 1 2011

WARREN COUNTY
Superior Court of New Jersey

| | |
|---|---|
| CLAUDIA CASSER, | :SUPERIOR COURT OF NEW JERSEY<br>:LAW DIVISION-WARREN COUNTY<br>:DOCKET NO.: WRN-L-125-10 |
| Plaintiff, | : Civil Action |
| vs. | : **ORDER GRANTING**<br>: **PARTIAL SUMMARY JUDGEMENT** |
| TOWNSHIP OF KNOWLTON, MAYOR AND COMMITTEE FOR KNOWLTON, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, TOWNSHIP OF KNOWLTON PLANNING BOARD, MEMBERS OF THE TOWNSHIP OF KNOWLTON PLANNING BOARD, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, RENE MATHEZ MARK J. HONTZ, ROGER THOMAS, RICHARD P. CUSHING, DAVID A. SMITH, RONALD C. FARBER, FRANK VAN HORN, GEORGE JAMES, CLAYTON TAYLOR, MICHAEL TIRONI, DALE GLYNN, HAL BROMM, HOWARD COWELL, HEYER, GRUEL & ASSOCIATES, PA, FRED HEYER, PAUL N. RICCI, AND JOHN AND JANE DOES, | : |
| Defendants. | : |

47

THIS MATTER having been opened to the court by Robert J. Greenbaum, Esq., of the Law Office of Robert J. Greenbaum , counsel for defendants, Township of Knowlton, Mayor and Committee for Knowlton, individually and in their official capacities, Township of Knowlton Planning Board, Members of the Township of Knowlton Planning Board, individually and in their official capacities, Rene Mathez, David A. Smith, Ronald C. Farber, Frank Van Horn, George James, Clayton Taylor, Michael Tironi, Dale Glynn, Hal Bromm, and Howard Cowell , by way of motion for partial summary judgment, and the court having considered the papers submitted and good cause shown,

IT IS ON THIS ___31 ST___ day of ___August___, 2011,

ORDERED, that the motion for partial summary judgment filed on behalf of the defendants, Township of Knowlton, Mayor and Committee for Knowlton, individually and in their official capacities, Township of Knowlton Planning Board, Members of the Township of Knowlton Planning Board, individually and in their official capacities, Rene Mathez, David A. Smith, Ronald C. Farber, Frank Van Horn, George James, Clayton Taylor, Michael Tironi, Dale Glynn, Hal Bromm, Howard Cowellis hereby granted in part, and it is

FURTHER ORDERED that ~~the complaint~~ Counts 5, 6, 7, 10 and 12 in the Complaint in this matter as against the defendants, Township of Knowlton, Mayor and Committee for Knowlton, individually and in their official capacities, Township of Knowlton Planning Board, Members of the Township of Knowlton Planning Board, individually and in their official capacities, Rene Mathez, David A. Smith, Ronald C. Farber, Frank Van Horn, George James, Clayton Taylor,

without prejudice

Michael Tironi, Dale Glynn, Hal Bromm, Howard Cowell ~~is~~ are hereby dismissed except for

the plaintiff's claim of fraudulent concealment; and it is Further Ordered that the Nature of Cross Motion is denied, without prejudice; and it is
FURTHER ORDERED that a copy of the within Order shall be served upon all

counsel of record within five days of the date hereof.

HON. AMY O'CONNOR, J.S.C.

Reasons - on the record

PREPARED BY THE COURT



Exhibit THREE

SUPERIOR COUR OF NEW JERSEY
LAW DIVISION - CIVIL PART
WARREN COUNTY
DOCKET NO.  L-125-10

CLAUDIA CASSER,                     :

                Plaintiff,      :

       v.                          :

KNOWLTON TOWNSHIP, et al        :

           Defendants.    :

CIVIL ACTION

**ORDER**

**THIS MATTER** having been opened to the court on the notice of motion of

defendants, Robert Greenbaum, Esq., appearing, and plaintiff having filed a Response,

and the court having considered the pleadings filed, and the arguments of counsel, and for

good cause shown:

**IT IS ON THIS 25th DAY OF MAY, 2012, ORDERED** as follows:

1.  That the notice of motion for summary judgment is denied, without prejudice.

2.  A copy of this Order shall be served upon all counsel involved in this matter

within 7 days.

Amy O'Connor, JSC

**Reasons:**  Attached

## Casser v. Knowlton Township, *et. al.*

The moving defendants are Knowlton Township (township); the Township Committee and the members of such Committee; the Planning Board and the members of the Planning Board; the mayor; and other individuals who have held positions within the township. The defendants have filed a motion for summary judgment seeking the dismissal of Counts One, Two, Three, Four, Eight, Nine and Eleven of the complaint.

As the court is writing exclusively for the parties, who are familiar with the facts of this case, the court will only mention the facts necessary to making the within decision.

## I. Dismissal of Counts One, Two Three, Four and Eleven

Defendants seek the dismissal of Counts One, Two Three, Four and Eleven on the grounds that the plaintiff should have prosecuted such claims in a prerogative writ action, which they claim has never been filed. Further, the defendants point out that the plaintiff admitted on the record that she does not believe that a prerogative writ action has been filed.

Defendants further argue that because the above counts were not set forth in a complaint filed in lieu of prerogative writ, plaintiff would be time barred under R. 4:69-6(a) from pursuing such claims were she now to file such complaint. Therefore, the defendants ask that such Counts be dismissed on the basis that they are time barred.

Before proceeding further, a summary of the subject Counts is in order.

Count I - Count I alleges that Knowlton Township exceeded its authority under the Municipal Land Use Law when it enacted ordinances which required those who subdivide their property to set aside a portion of their property to "open space." Plaintiff claims the application of such ordinances caused her to sustain damages, for which she seeks monetary compensation.

Count II - In Count Two the plaintiff alleges that the defendants sought to preserve the plaintiff's farm as open space, but failed to proceed in

1

accordance with NJSA 40:55D-44. Instead, the township and Planning Board wrongfully required plaintiff to restrict half of her land to open space, without compensation, as a condition of her minor subdivision approval. The plaintiff alleges that the defendants' actions reduced the value of her land and deprived her of just compensation, in violation of NJSA 40:55D-44. Plaintiff seeks compensatory damages under this Count.

Count Three - Count Three of the Complaint alleges that by requiring the plaintiff to restrict half of her property to open space, she was required to physically "outline" the restricted area with multiple metal pins and posts; adhere to an open space management plan approved by the defendants; provide defendants access her property so that they could ensure she had installed the metal pins and posts, and was complying with the "open space deed restriction" and the open space management plan. Plaintiff alleges that as a result she acquired a "lesser interest in the land for public purposes, within the meaning of NJSA 40:55D-44." Plaintiff seeks compensatory damages under this Count.

Count Four - Count Four alleges that the terms and conditions set forth in the Planning Board's Resolution which approved the plaintiff's minor subdivision were "ultra vires" and therefore void. Plaintiff requests a declaratory judgment stating that same is in fact ultra vires and void. The plaintiff further requests that the court reform the Resolution to "delete the terms and conditions as void." In addition, as the Resolution also required the plaintiff to get a variance from one particular ordinance, the plaintiff requests that such requirement be struck from the Resolution. Finally, plaintiff requests that if the defendants are not required to compensate plaintiff for the "open space set-aside," then plaintiff asks that there be a reformation of the deeds to delete the "aforementioned provisions plus re-filing of the deeds, all at defendants' expense."

Count Eleven - In Count Eleven the plaintiff alleges that the Planning Board required plaintiff to reconfigure her sub-divided lots into irregular shapes. Plaintiff claims the irregular shapes of the lots diminishes the market value of such lots. Plaintiff requests that if the defendants are not required to compensate plaintiff for the "open space set aside," then plaintiff asks that the defendants be ordered to reform the sub-division map and deeds to reflect more regular and rational shapes for the lots.

2

On the issue that a prerogative writs complaint has not been filed, while the court understands the defendants relied upon the plaintiff's opinion to the effect that she believed she did not file a complaint in lieu of prerogative writ, the plaintiff's opinion is in fact a legal one and therefore not binding on the court. After conducting legal research on the issue, the court is satisfied that Counts Four and Eleven can be pursued as prerogative writ actions. While the plaintiff had included other causes of action in her complaint which may not be actions in lieu of prerogative writs, in substance Count Four and Count Eleven sound in prerogative writ and can be pursued as such.

The next issue is whether Counts Four and Eleven were timely filed. The defendants in essence argue that any prerogative writ claims plaintiff may have are time barred under R. 4:69-6(a), as her complaint was not filed within 45 days of the municipal action or decision which the plaintiff seeks to have overturned. The decisions being challenged by the plaintiff were made in 2007 and the complaint was filed on March 8, 2010.

The court notes that defendants did not address R.4:69-6(c). The defendants are seeking to have the court rule, as a matter of law, that any prerogative writ action filed more than 45 days after any decision made by the municipality is time barred. While clearly the plaintiff filed a complaint beyond the 45 day time period referenced in R. 4:69-6(a), the court cannot say as a matter of law that the plaintiff is time barred from pursuing a prerogative writs action because plaintiff may not be time barred under R. 4:69-6(c).

Therefore, the request that Counts Four and Eleven be dismissed is denied, without prejudice.

Counts One, Two and Three seek monetary damages. Monetary damages are precluded in an action in lieu of prerogative writ, absent constitutional or statutory authority for such damages. See Porreca v. City of Millville, 419 N.J. Super. 212, 233 (App.Div. 2011); See also Harvey v. Twp. of Deptford, 402 N.J. Super. 156, 165 (App.Div. 2008). Counts One, Two and Three may not be prerogative writ actions, but such Counts may remain in the complaint. With respect to the within motion, whether or not such actions are time barred have not yet been addressed.

Therefore, the request that Counts One, Two, and Three be dismissed from the complaint is denied, without prejudice.

## II. Dismissal of Dismissal of Counts Eight and Nine

Count Eight – In Count Eight plaintiff alleges she was required to set aside half of her tract of land as open space, which she alleges is equivalent to the township exacting an open space easement and is an improper taking without just compensation.

Count Nine – In Count Nine, the plaintiff alleges that in addition to requiring the plaintiff to deed-restrict half of her tract of land as open space, defendants also "down zoned" plaintiff's property from AR1 to FPD with 0.1 density. Plaintiff further alleges that by forcing plaintiff to install permanent preservation markers and giving defendants the right to enter plaintiff's land to inspect whether plaintiff is complying with the defendants' conditions and the open space management plan, the defendants have an easement. As a result, the defendants have grossly devalued the plaintiff's property, have thwarted her plans to develop her property and have eliminated reasonable investment expectations. Plaintiff also alleges the defendants have forced her to bear a public burden. Plaintiff alleges that the defendants' conduct constitutes an inverse condemnation and taking of her property, in violation of the Constitution of the State of New Jersey.

Defendants argue that the above Counts must be dismissed, as the defendants neither took physical possession of any of the plaintiff's property nor took any regulatory action which had the effect of substantially destroying the beneficial use of the plaintiff's property. See Mansoldo v. State, 187 N.J. 50, 59-60 (2006).

The motion has to be denied, but without prejudice, as the court cannot find based upon the competent evidence submitted that there was neither a physical nor regulatory taking of the plaintiff's property. The evidence supplied by the defendants was in the form of a Statement of Material Facts, which merely states, in pertinent part, that on March 9, 2007, the plaintiff filed a minor subdivision application and site plan, and on October 23, 2007, the Planning Board adopted a Resolution which required the plaintiff to place farm land restrictions on her property. The court cannot find from same that, as a matter of law, there was neither a physical nor

regulatory taking. Needless to say the plaintiff did not supply any competent evidence that supported the defendants' application.

While the plaintiff ultimately bears the burden of proving whether an ordinance or action taken by the defendants deprives her of all or substantially all economically beneficial use of her land, the within application is a Notice of Motion for Summary Judgment made by the defendants. The burden is on the defendants to come forward with sufficient evidence to enable the court to find that (1) none of the material facts are in dispute; and (2) the facts show that the defendants did not take any property or substantially destroy the beneficial use of the plaintiff's property. In a motion for summary judgment, the material facts alleged must be sufficiently supported and demonstrate that the moving party is entitled to the relief sought. Parks v. Rogers, 176 N.J. 491 (2003) Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 302 (App. Div. 2009).

Accordingly, the defendants' request that Count Eight and Count Nine of the complaint be dismissed is denied, without prejudice.

III.    Applicability of New Jersey Shore Builders Association v. Township of Jackson, 199 N.J. 449 (2009).

In their brief the defendants address the applicability of New Jersey Shore Builders Association v. Township of Jackson, 199 N.J. 449 (2009). However, the defendants do not request a ruling on whether or not any of the subject ordinances is valid; the defendants merely request the dismissal of various Counts in the Complaint, addressed above, and that the individually named defendants be dismissed under the Tort Claims Act, addressed below. Any ruling on the applicability of New Jersey Shore Builders would not affect the court's decision on whether or not to dismiss any of the Counts defendants' sought to have dismissed in the within Notice of Motion for Summary Judgment. Further, with respect to Count Eight and Count Nine, even if any of the challenged ordinances were deemed valid, same would not necessarily preclude an action by a claimant to seek damages for an alleged taking without just compensation or inverse condemnation.

Accordingly, the court shall not be making a finding about the applicability of the New Jersey Shore Builders decision.

**IV.**   Dismissal of the Individually Named Moving Defendants

The individually named, moving defendants are employees of the township, members of the governing body, or members of the Planning Board. Defendants argue that they are immune from suit under NJSA 59:3-2, NJSA 59:3-4, NJSA 59:3-5, NJSA 59:3-6, NJSA 59:3-8 and NJSA 59:3-10.

The defendants did not address how the Tort Claims Act would apply in this matter, as the remaining counts do not allege a tort. Therefore, the request to dismiss the individually named defendants is denied, without prejudice.

# PRIORITY
## ★ MAIL ★
# EXPRESS™

**OUR FASTEST SERVICE IN THE U.S.**

**WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.**



**EP13F July 2013   OD: 12.5 x 9.5**



**PS 10001000006**

---



1007        08608        **$24.70**
R2305K134171-03

E M 0 6 2 6 6 2 4 7 7 U S

# EM062662477US



## UNITED STATES
## POSTAL SERVICE ®

**PRIORITY
★ MAIL ★
EXPRESS™**

---

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT)        PHONE (973) 670-1950

C Casser
17 Woodruff Way
Columbia, NJ
07832

**PAYMENT BY ACCOUNT (if applicable)**

**DELIVERY OPTIONS (Customer Use Only)**

☐ **SIGNATURE REQUIRED** Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)*
☐ 10:30 AM Delivery Required (additional fee, where available)*
   *Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)        PHONE (    )

Clerk U.S. District Court
Clarkson S. Fisher Building +
Room 2020   U.S. Courthouse
402 East State Street
Trenton, NJ

**ZIP + 4®** (U.S. ADDRESSES ONLY)

0 8 6 0 8 -

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance included.

---

| ORIGIN (POSTAL SERVICE USE ONLY) | | | |
|---|---|---|---|
| ☐ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |
| PO ZIP Code 07560 | Scheduled Delivery Date (MM/DD/YY) 4/30/18 | Postage $ | |
| Date Accepted (MM/DD/YY) 4/25/18 | Scheduled Delivery Time ☐ 10:30 AM ☐ 3:00 PM ☑ 12 NOON | Insurance Fee $ | COD Fee $ |
| Time Accepted 1:45 ☐ AM ☐ PM | 10:30 AM Delivery Fee | Return Receipt Fee | Live Animal Transportation Fee |
| Special Handling/Fragile $ | Sunday/Holiday Premium Fee $ | Total Postage & Fees $ 24.70 | |
| Weight 1 lbs. 7 ozs. ☐ Flat Rate | Acceptance Employee Initials KLM | | |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | ☐ AM ☐ PM | |
| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
| | ☐ AM ☐ PM | |

LABEL 11-B, OCTOBER 2016        PSN 7690-02-000-9996        **3-ADDRESSEE COPY**

---

**WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.**

---

## VISIT US AT USPS.COM®
### ORDER FREE SUPPLIES ONLINE





## UNITED STATES
## POSTAL SERVICE